THE KANSAS CITY, OUTER BELT AND ELECTRIC RAIL-
ROAD COMPANY V. THE BOARD OF RAILROAD COM-
MISSIONERS OF THE STATE OF KANSAS *et al.*

No. 14,696.     (84 Pac. 755.)

SYLLABUS BY THE COURT.

1. RAILROAD COMMISSIONERS—*Jurisdiction Does Not Extend to
Electric Railroads.* In giving the board of railroad commis-
sioners supervision over railroads operated by steam the
statute by implication denies them power over railroads op-
erated only by electricity.

2. ——— *Statutory Definition of "Railroad Company"—Road
Operated by Steam.* In defining the term "railroad company"
as used in the railroad commissioners law (Gen. Stat. 1901,
§ 5997) to mean a company whose road is operated by steam,
the statute forbids such term's being construed to include
a company owning a road operated only by electricity, ex-
cept where such intention may be expressly manifested.

3. ——— *Determination of Applications for Permission to Cross
Tracks of Other Roads.* The section of the statute which
gives the board of railroad commissioners authority to hear
and determine the application of a railroad company for per-
mission to cross its track "with any other railroad upon the
grounds of such other railway corporation" (Gen. Stat. 1901,
§ 5974) does not apply to a case where a railroad company
seeks to cross the track of a railway company whose line is
operated entirely by electricity.

4. ——— *Electric Railroad—Permission to Use Steam—Juris-
diction of Commissioners.* A line of railway which is so
constructed as to be operated only by electricity, and which
is in fact so operated, is not a railroad operated by steam
within the meaning of the railroad commissioners law, even
although it is owned and managed by a corporation whose
charter permits the use of steam as a motive power.

5. ——— *Application by Steam Railroad to Cross Electric Rail-
road.* The board of railroad commissioners has no jurisdic-
tion to entertain an application by a railroad company for
leave to cross its track with that of a railway company using
only electricity as a motive power.

Original proceeding in mandamus. Opinion filed
February 10, 1906. Peremptory writ denied.

*John A. Eaton,* and *H. L. Alden,* for plaintiff.

*Carr W. Taylor,* and *C. F. & S. D. Hutchings,* for defendants.

The opinion of the court was delivered by

MASON, J.: The Kansas City, Outer Belt and Electric Railroad Company, which for convenience will in this discussion be designated as the railroad company, is a corporation engaged in the construction of an ordinary railroad, to be operated by steam. The Kansas City Western Railway Company, which will be called the electric railway company, is a corporation engaged in the operation of what it describes as a street-railway, extending from Kansas City to Leavenworth. The former company, desiring to build its road so as to cross that of the latter at a point within the city of Kansas City, Kan., not upon a street or other public place, made an application to the board of railroad commissioners asking that it investigate the matter and make an order permitting such crossing and fixing the manner in which it should be made. The board dismissed the application upon the ground that it had no jurisdiction. The railroad company now seeks by mandamus to compel the board to entertain its application and make a decision upon the merits. An alternative writ has been issued, an answer filed, and the facts agreed upon.

The plaintiff founds its action upon that part of section 5974 of the General Statutes of 1901 which reads:

"Any railroad company authorized to operate a railroad in this state desiring to cross or unite its track with any other railroad upon the grounds of such other railway corporation shall make application in writing to the board of railroad commissioners, stating the place of crossing or intersection; whereupon the board of railroad commissioners shall fix a day for the hearing of such application, and notify the railway corporations interested, at which time, unless further time be granted by the board, the corporations inter-

ested shall be heard in regard to the necessity, place, manner and time of such crossing or connection; and upon such hearing either party, or the board, may call and examine witnesses in regard to the matter; and the board shall, after such hearing and a personal examination of the locality where a crossing or connection is desired, determine whether there is a necessity for such crossing or not, and, if so, the place thereof, whether it shall be over or under the existing railroad, or at grade, and in other respects the manner of such crossing and the terms upon which the same shall be made and maintained."

The question to be determined is whether the electric railway company is a railroad company within the meaning of this statute. The plaintiff claims that it is. The defendants claim that it is not, for these reasons: (1) That it is engaged in operating a street-railway only, while the statute has no application to any roads but such as for the purpose of the distinction are called commercial railroads, and (2) that it employs only electricity as a motive power, while the statute applies only to railroads operated by steam.

While the word "railroad" in an act of the legislature is ordinarily held not to include a street-railway (*The State v. Cain,* 69 Kan. 186, 76 Pac. 443), this is not an arbitrary and inflexible rule, and where street-railways are within the spirit and purpose of a law, although not expressly named, they have been regarded as covered by the general term "railroad." (For illustrations of both classes of cases, see 7 Words and Phrases Judicially Defined, pp. 5904-5907. See, also, *Railroad Co. v .Jackson,* 70 Kan. 791, 79 Pac. 662.) In the present case it will not be necessary to decide whether the statute invoked by plaintiff was intended to apply to any but commercial railroads, nor whether under the agreed facts the line operated by the electric railway company was strictly a street-railway, which is itself a question not free from doubt. The section from which the foregoing quotation is made is a part

of chapter 286 of the Laws of 1901, section 37 of which (Gen. Stat. 1901, § 5997) reads:

"In construing this act, unless such meaning be repugnant to the context or the manifest intention of the legislature, the term 'railroad company' shall include and be construed to mean any incorporated railroad company, or any express or transportation company or other common carrier, or any railroad-bridge company, or any person or persons, lessee, assignee, trustee, receiver, partnership, joint-stock company, or corporation, engaged wholly, partially, jointly or severally in laying out, constructing, owning, operating, using or maintaining any railroad operated by steam, or any portion or part of such railroad line. The word 'person' shall include persons, partnerships, joint-stock companies, or corporations."

A first consideration of this section naturally creates an impression that its intention and effect is to confine the operation of the law absolutely to steam railroads, which impression is intensified by an examination of section 7 of the same act (Gen. Stat. 1901, § 5967), reading:

"Said commissioners shall have the general supervision of all railroads *operated by steam* within the state, and all express companies, sleeping-car companies, and all other persons, companies or corporations doing business as common carriers in this state; and shall inquire into any neglect or violations of the laws of this state by any person, company or corporation engaged in the business of transportation of persons or property therein, or by the officers, agents or employees thereof; and shall also from time to time carefully examine and inspect the condition of each railroad in the state, and of its equipment, and the manner of its conduct and management with reference to the public safety and convenience."

These two sections are but reenactments of parts of the original act creating a board of railroad commissioners in this state (Laws 1883, ch. 124, §§ 5, 26), which was repealed in 1898 (Laws 1898, ch. 29) and readopted with various changes in 1901. Their lan-

guage was apparently borrowed from an Iowa law passed in 1878. (Laws of Iowa, 1878, ch. 77, §§ 3, 16.) It might be argued that at the time the test of being "operated by steam" was adopted as a means of classifying railroads steam was the only recognized motive power employed for rapid transit, and that therefore the phrase should be interpreted as covering any mechanical force, such as electricity, that afterward came into use for that purpose. This view was taken by the New York supreme court (73 N. Y. Supr. Ct. 366, 21 N. Y. Supp. 1046) of a similar expression occurring in a contract entered into in 1882, but the court of appeals was of a different opinion and accordingly reversed the case. (*P. P. & C. I. R. R. Co. v. C. I. & B. R. R. Co.*, 144 N. Y. 152, 39 N. E. 17, 26 L. R. A. 610.) If the argument were otherwise convincing the failure to modify the language of the sections quoted in 1901, when the entire act was remodeled, must be taken to indicate that notwithstanding the changed conditions since the board of railroad commissioners was first established the legislature was still content to limit its powers to the control of railroads operated by steam.

The plaintiff, however, contends that a close scrutiny of both sections will justify the conclusion that the phrase "operated by steam" is intended to limit the word "railroad" only with respect to its use in the very clause in which it occurs, and that it is not to be regarded as having relation to any other part of the sentence. By this method the construction to be placed upon section 37 (Gen. Stat. 1901, § 5997) might be thus indicated: "The term 'railroad company' shall include and be construed to mean (1) any incorporated railroad company, or (2) any express or transportation company or other common carrier, or (3) any railroad-bridge company, or (4) any person . . . or corporation, engaged · . . . in laying out, constructing, owning, operating, using or maintaining any

railroad operated by steam." And that of section 7 (Gen. Stat. 1901, § 5967) in this manner: "Said commissioners shall have the general supervision of (1) all railroads operated by steam within the state, and (2) all express companies, sleeping-car companies, and (3) all other persons, companies or corporations doing business as common carriers in this state."

Granting that the interpretation suggested is consistent with the rules of grammar, and even assuming that it would be required by a close adherence to the very letter of the statute, its adoption is forbidden by two considerations: It would manifestly give the law a broader operation than ever could have been intended, and it would entirely destroy the force of the words "operated by steam." It requires no argument to prove or example to illustrate that it was not the purpose of the legislature to vest in the railroad commissioners jurisdiction over all railroad-bridge companies and all transfer companies, or even over common carriers of every sort. If such were the case there could be no occasion for distinguishing between the different classes of railroads. The express and repeated affirmance that the board is to exercise control over railroads operated by steam by the plainest implication denotes that railroads not so operated are excluded from the scope of its duties.

We conclude that the railroad commissioners have no general jurisdiction over a company engaged in the operation of an electric railway; that such a company is not included within the term "railroad company" as ordinarily employed in the statute referred to; and that the language of the section relating to the crossing of railroad-tracks does not manifest an intention to give that part of the law any wider application in this respect.

A final claim of the plaintiff is that the electric railway company is within the control of the board of railroad commissioners by reason of the fact that the

charters under which it exists and does business authorize it to employ steam as a motive power, although it in fact has not done so. It is agreed that the road as now constructed is only adapted to the use of electricity; that being true, its owner is not now engaged "in laying out, constructing, owning, operating, using or maintaining any railroad operated by steam," and is not within the terms of the statute.

A peremptory writ is denied.

All the Justices concurring.