GEORGE W. O'MALLEY et al., *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF RILEY et al., *Appellees*.

No. 17,497.

SYLLABUS BY THE COURT.

"RAILROAD"—"*Railroad Company*"—"*Street Railway*"—"*Electric Street Railway*"—*Distinguished*. The words "railroad" and "railroad company" as used in section 1 of chapter 142 of the Laws of 1877 and in amended section 1 of chapter 183 of the Laws of 1887 (Gen. Stat. 1909, § 7027) do not mean "street railway," "electric street railway," nor an interurban company such as is described in the petition in this case.

Appeal from Riley district court. Opinion filed March 9, 1912. Reversed.

*F. L. Williams*, and *James V. Humphrey*, for the appellants. .

*Robert J. Brock*, for the appellees.

The opinion of the court was delivered by

SMITH, J.: The voters of Ogden township, Riley county, as appears by the petition, had regularly voted to make a subscription to the capital stock of The Manhattan City and Interurban Railway Company to the amount of $10,000. The appellants, conceded to be voters and taxpayers of Ogden township, filed their petition in the district court of Riley county for a tem-

porary injunction to restrain the appellees, the county and township officers named, from making such subscription. The application was presented before the judge of the district court, all parties appearing, the case was submitted on the verified petition, neither party offering additional evidence, and the application was denied. The petition alleges, with others, the following facts:

"Plaintiffs further say that the said defendant, The Manhattan City and Interurban Railway company, is a *street railway* organized and incorporated under the laws of the territory of Arizona; that said railway company was so incorporated in Arizona on the 28th day of October, 1908, and by the terms of its articles of incorporation was empowered to construct and operate an *Electric Street Railway* system in the City of Manhattan, Riley county, Kansas, and in any other city or cities, or county or counties, in the State of Kansas, and that a copy of said articles of incorporation is hereto attached marked Exhibit 'A,' and made a part of this amended petition.

"Further, plaintiffs say that thereafter in the month of November, 1908, said railway company applied to the Charter Board of the State of Kansas for authority to engage in business in the State of Kansas as a foreign corporation in the business the nature and character of which was to construct and operate an *Electric Street Railway system* in the city of Manhattan, Riley county, Kansas, and in any other city or cities, or county or counties in the State of Kansas; that said application was on the 20th day of November, 1908, approved by the Charter Board of the State of Kansas, which was duly endorsed upon said application. A copy of said application with all endorsements thereon is hereto attached and marked 'Exhibit B' and made a part of this amended petition. . . . It is the purpose and intention of said defendant railway company in seeking and procuring the aforesaid subscription of said township to use the same and the proceeds thereof in building, constructing and maintaining an *Electric street railway*, operated by electric power from Manhattan to and through said Ogden Township, and plaintiffs allege that all of the said proceedings have been carried out with

48—86 KAN.

the intention on the part of all persons interested therein, including all of the defendants herein, of using such subscription and the proceeds of the bonds to be issued thereunder for the purpose of building, constructing and maintaining an *Electric street railway,* operated by electric power, from Manhattan, Kansas, to said Ogden township."

The statute applicable is section 7027 of the General Statutes of 1909, being chapter 142 of the Laws of 1877, as amended by section 1 of chapter 183 of the laws of 1887. It reads:

"Whenever two-fifths of the resident taxpayers of any county or two-fifths of the resident taxpayers of any municipal township shall petition in writing to the board of county commissioners, or whenever two-fifths of the resident taxpayers of any incorporated city shall petition the mayor and council of such city to submit to the qualified voters of such county, township or city a proposition to subscribe to the capital stock of or to loan the credit of such county, township or city to any railroad company constructing or proposing to construct a railroad through or into such county, township or city, the county commissioners for such county or township, or the mayor and council for such city, shall cause an election to be held to determine whether such subscription or loan shall be made; provided, no county shall issue under the provisions of this act more than $100,000 and an additional five per cent indebtedness of the assessed value of such county; and no township shall be allowed to issue more than $15,000 and five per cent additional of the assessed value of the property of such township; and in no case shall the total amount of county, township and city aid to any railroad company exceed $2000 per mile for each mile of railroad constructed in said county; provided further, that a second election for the same purpose shall not be held unless upon a petition of a majority of the legal voters of such county, township or city."

The petition assigns seven reasons why the injunction should be granted, but it is conceded by each party that the question depends upon the following:

"The said defendant, The Manhattan City and Interurban Railway Company, is a street railway company,

O'Malley v. Riley County.

and is not a 'railroad' company within the meaning of the statutes of Kansas, under which the said election was called, the said proceedings maintained and conducted and under which it is proposed to issue said bonds and make said subscription."

There was no conflict in the evidence. The sole question for the court to consider was whether the statute, as amended in 1887, can now be applied to a railroad of the kind described in the petition, and authorize the subscription by the township to the capital stock thereof pursuant to the election. That railroads of the character of the one in question could not have been in contemplation at the time of the last amendment to the statute prior to the commencement of this action, viz., in 1887, is certain. There were no such railroads in the state at that time. We take judicial cognizance of the accuracy of the following statement:

"The first electric railway in the state was built in Topeka in 1888-'9. The Rapid Transit Company had a street railway line here, operated by steam motors. These were not satisfactory, so the line was wired and electric equipment put in. At the time Topeka had the longest electric railway in the United States."

We also take judicial notice of developments in the years since 1887 and that the word "railroads" as applied to the ordinary traffic roads, and "street railways" as applied to such roads as are and were designed and employed only in the carriage of passengers in the cities and towns, have a somewhat different significance now than the same words had in 1887. Yet the general character of each is still distinguishable. The interurban railroad, the functions of which are to be performed by the railroad in question through Ogden township, has acquired in a measure, but only in part, the characteristics of each of the two former classes of railroads. Here lies the difficulty in this case. That generically the word "railroad" includes all roads upon which the carriages or cars have wheels adapted to run and which in operation do run upon metallic rails is con-

ceded. The term includes tramways used in mining; it includes railroads in which the propelling power is steam, electricty, the horse or mule, and even those upon which push cars are propelled by men.

In 1887 the use of the unqualified word "railroad" was certainly generally understood to refer to the then ordinary steam-propelled traffic railroad. Electricity is now the propelling power upon some railroads not otherwise essentially different in construction or function. The latter, however, are generally designated as "electric lines" or "electric roads." There can be no question, then, that the words "railroad" and "railroad company," at the time of the enactment of the statute in question, meant the ordinary steam railroad of general traffic. We are cited to several cases in which interpretation is given of the words "railroad" and "street railroad" as depending upon the power used, and other special distinctions. Other cases, including *Hannah v. Street R'y Co.*, 81 Mo. App. 78, are decided with reference to the object to be subserved or the duty imposed by the statute in question, the reason for and purpose of the statute. Further than this the decisions are of little assistance here. As a judicial interpretation by this court of the word "railroad," we are referred to *The State v. Cain*, 69 Kan. 186, 76 Pac. 443, in which it was decided:

"The wilful breaking of the window of a street-car in use upon a street-railway is not a violation of any of the provisions of section 2098, General Statutes of 1901." (Syl.)

The material part of the section (Gen. Stat. 1901, § 2098, Gen. Stat. 1909, § 2595) in question in that case is:

"Every person who shall wilfully . . . break . . . (or) injure . . . any . . . car . . . which now is or which may hereafter be in use upon any railroad in this state . . . shall on conviction thereof be punished."

Again, in the same case, it was said:

"The authorities generally hold that street-railways are not included in the word 'railroads,' and the provisions of the statute of the different states concerning railroads have not been held to include street-railways." (p. 189.)

We have examined the numerous cases cited, and others, pro and con, and feel fully justified in reaffirming the above statement of this court. In the various decisions of this court, without exception so far as the writer has been able to discover, the word has been used in the same sense when no word extending the meaning has been used in connection therewith.

Section 4 of chapter 238 of the Laws of 1911 seems to be a legislative construction that railroad companies, street railroad companies, and suburban or interurban companies are distinctive organizations. It reads:

"The term 'common carriers,' as used in this act, shall include all railroad companies, express companies, street railroads, suburban or interurban railroads, sleeping car companies, freight line companies, equipment companies, pipe line companies, and all persons and associations of persons, whether incorporated or not, operating such agencies for public use in the conveyance of persons or property within this state."

(See, also, *Railroad Co. v. Railroad Commissioners*, 73 Kan. 168, 84 Pac. 755.)

As indicating that section 7027 of the General Statutes of 1909, at the time the aid in question was voted, referred only to steam railroads as formerly, it may be noted that the section was amended by section 1 of chapter 242 of the Laws of 1911, to include " a railroad operated by steam, electricity or other power."

Before the extension of municipal aid to an enterprise that is at most only quasi public is sustained by the court, it should *clearly* appear that it is authorized by statute. In all the statutes authorizing municipal aid to railroads, a maximum limit to the extent of such aid is specified. The maximum limit in the statute in

question may reasonably be presumed to have some relation to the aggregate cost of the railroad within the specified territory. It is within common knowledge that the difference in the cost per mile of constructing and equipping the ordinary traffic railroad and the like cost of a street or interurban railroad is so great that it does not seem reasonable that the legislature intended the same provision should apply to the three different systems.

The order of the judge at chambers is reversed, and the case is remanded for further proceedings in accordance with the views herein expressed.