STATE OF MAINE *vs.* YORK UTILITIES COMPANY.

Kennebec.     Opinion, February 7, 1946.

*Abraham Breitbard*, Deputy Attorney General, for the State.

*Titcomb & Siddall*, for the defendant.

SITTING: THAXTER, HUDSON, MANSER, MURCHIE, TOMPKINS, JJ.

THAXTER, J.   There are two separate actions involved here brought against the defendant, a street railroad, to recover excise taxes assessed for the years 1943 and 1944. The issue involved in each case is exactly the same. Both cases were defaulted under an agreement that they should be heard by the court in damages with right of exceptions reserved. The only question is what is the proper method for ascertaining the rate for determining the tax and the amount thereof. The decision of this question involves an interpretation of R. S. 1930, Chap. 12, Sec. 35 as amended by P. L. 1941, Chap. 99, now incorporated in R. S. 1944, Chap. 14, Sec. 116, which reads as follows:

> "*Taxation of street railroad corporations*. Street railroad corporations and associations which own or operate a street railroad are subject to the 7 preceding sections and all street railroad corporations and associations are subject to section

4 of chapter 13, except that the annual excise tax shall be ascertained as follows: when the gross average receipts per mile do not exceed $1,000 the tax shall be equal to $\frac{1}{4}$ of $1\%$ on the gross transportation receipts; and for each thousand dollars additional gross receipts per mile, or fractional part thereof, the rate shall be increased $\frac{1}{4}$ of $1\%$, provided that the rate shall in no case exceed $4\%$."

Until 1925 the defendant operated a trolley car service over rails for the transportation of passengers and freight. In that year it commenced to add busses until in 1943 its track mileage had been reduced from 36.81 miles to 2.44 miles and its bus mileage had risen to 225 miles.

In determining what under the statute were the "gross average receipts per mile" the state tax assessor divided the gross transportation receipts received from rail operation by the number of miles of track mileage and disregarded the receipts from bus operation and the mileage of the bus routes. The result of this method of computation was to render the defendant liable for a tax based on the full four per cent of the gross transportation receipts.

The company contends that there should be included in the gross transportation receipts the revenue received from both bus and rail revenue and that this amount should be divided by the sum of the rail and bus mileage to determine the "gross average receipts per mile." On this method of computation the tax rate would be one quarter of one per cent which would be applied to the "gross transportation receipts" which would be the sum of the rail and bus transportation receipts. This method of figuring would result in a materially smaller tax.

The question in short is, was the defendant in operating its bus lines engaged in operating a street railroad as these words are used in the statute. The presiding justice ruled, in accordance with the claim of the state, that it was not, and determined the amount of the tax accordingly. The defendant has brought the cases before us on exceptions to this ruling.

Depending on the context, the word "railroad" may or may not include a street railroad, but nowhere do we find any authority for holding that there is included within that designation any road on which the carriages or cars do not operate on rails. In fact our court has adopted the following definition found in 25 R. C.L., 1120, now found in 44 Am. Jur., 215, as to what constitutes a railroad: "Generically the word 'railroad' includes all roads upon which the carriages or cars have wheels adapted to run, and which in operation do run upon metallic rails. The term includes tramways used in mining; it includes railroads in which the propelling power is steam, electricity, the horse or mule, and even those upon which push cars are propelled by men." *State* v. *Boston and Maine Railroad Co.*, 123 Me., 48, 55, 121 A., 541, 545. See also *O'Malley* v. *Riley County*, 86 Kan., 752, 121 P., 1108; Ann. Cas. 1913, C. 576; *Woodward* v. *City of Seattle*, 140 Wash., 83, 248 P., 73. In this last case the question was whether a city given authority by statute to operate a street railway system had power to run a motor bus service as incidental to the operation of such street railway. In holding that such operation was *ultra vires* the court said, page 87: "The power granted by the statute is restricted to railways; and to say that the term 'railways' may be construed to include motor busses and motor-bus routes, is to say that the term also includes all manner of transportation, including that by water and by air."

It is clear that our statutes governing the operation of street railways and busses do not contemplate that the operation of a bus is in any way the operation of a street railroad. By various enactments, embodied in R. S. 1930, Chap. 62 as amended, the public utilities commission was given certain control over public utilities including street railroads which were defined in Section 15 as follows: "The term 'street railroad' when used in this chapter, includes every railway, and each and every branch or extension thereof, by whatsoever power operated, being mainly upon, along, above or below any street, avenue, road, highway, bridge, or public place within any city or town, together with all real es-

tate, fixtures, and personal property of every kind used in connection therewith, owned, controlled, operated, or managed for public use in the transportation of persons or property." It should be noted that a street railroad is here regarded as a "railway." Nothing is said about busses. When busses came into use, the public utilities commission was given authority over their operation by the provisions of a separate statute embodied in R. S. 1930, Chap. 66, entitled "Motor Vehicles Carrying Passengers for Hire." Nowhere is it suggested that the commission had any control over busses because their operation constituted in any sense the operation of a street railroad and as such subject to the provisions of Chapter 62.

Counsel for the defendant contends, however, that the state tax department for many years assessed the excise tax against the defendant in accordance with the defendant's present interpretation of it and that such interpretation acted on for many years should be controlling on the court. The presiding justice, who wrote an exhaustive opinion on this subject, has a sufficient answer to this claim. He said: "While in a doubtful case, such a consideration should have weight, and perhaps great weight as a guide to judicial interpretation of a statute it cannot overcome the clear meaning as expressed in the statute itself. Such consideration is at best but a guide to the ascertainment of legislative intent. To make it a hard and fast rule for the construction of statutes would result in transferring the legislative and judicial functions to administrative agencies, a result fostered elsewhere but which as yet has obtained no foot-hold here in Maine."

Both the wording of the statute in question and its relationship to other provisions show clearly what the legislature intended. The effect is not absurd or unreasonable. Neither an administrative agency nor the court has any right to modify its provisions.

*Exceptions overruled.*

Mr. Chief Justice Sturgis took no part in the consideration or decision of this case.