[No. 17602.   Department Two.   February 10, 1923.]

R. A. WILEY *et al., Respondents,* v. THE CITY OF. ABERDEEN *et al., Appellants.*[1]

MUNICIPAL CORPORATIONS (114, 117)—PUBLIC IMPROVEMENTS—POWER TO MAKE—WATER COURSES—PUBLIC OR PRIVATE BENEFIT. Rem. Comp. Stat., § 9355, giving cities of the second class power to construct dikes or improve natural watercourses, is confined to public purposes; and does not authorize the city to put in a culvert on private property to keep open a non-navigable natural water course, which had become obstructed by a private culvert and the failure of private owners to properly maintain the same.

SAME (234, 282)—IMPROVEMENTS—ASSESSMENTS—JURISDICTION—COLLATERAL ATTACK—PUBLIC OR PRIVATE PURPOSE. Where a city improvement at the expense of property benefited was not for the benefit of the public, the city was without original jurisdiction, and the proceeding was void, subject to attack at any time, notwithstanding Rem. Comp. Stat., § 9375.

Appeal from a judgment of the superior court for Grays Harbor county, Sheeks, J., entered December 24, 1921, in favor of the plaintiffs, in an action to cancel a local assessment, tried to the court.  Affirmed.

*A. Emerson Cross* and *J. C. Hogan,* for appellants.
*Theodore B. Bruener,* for respondents.

TOLMAN, J.—This is an action to set aside and cancel municipal local assessments.  From a judgment granting the relief prayed for, this appeal is prosecuted.

It appears that Wilson creek is a natural water course about a mile in length, running through private property, crossing public streets and alleys, and emptying into Grays Harbor, all within the limits of the city of Aberdeen.  The testimony shows that, for more than thirty years last past, with the exception hereinafter mentioned, this stream has followed its

[1]Reported in 212 Pac. 1049.

natural open channel without material change, and that the lands through which it flows have been platted without reference to its channel. In places, the owners of the lands through which it flows have planked its banks to prevent erosion, and in a few instances have erected buildings covering the channel, but permitting the passage of the stream underneath without interruption.

Some years ago, the owners of lots 9 and 10, block 5, Town of Wishkah (within the city of Aberdeen), through which the creek flows, constructed a wooden culvert substantially upon the boundary line between the lots mentioned, through which they conducted the stream, thereby perhaps slightly changing its natural course across their property, but permitting it to continue in its natural bed, both before entering and after leaving the boundaries of their lands. Earth was filled in over this culvert so that the surface thereafter was used by the owners as though no stream there existed. In the course of time, this wooden culvert decayed, gave way, and the broken planks with the earth above fell into the stream, blocked its passage, caused the waters to back up into the street at the upper end of the culvert, and perhaps in some degree to flood private property above.

At this time and under these conditions, the city undertook to, and did, build a concrete culvert on the site of the wooden culvert which had given away, by means of which the stream was conducted from Summit street on the north across this private property along the boundary line between the lots as indicated, across the alley to the south, and thence in its natural channel as an open stream, except as it passed through culverts in public streets, to the bay into which it empties; the whole improvement being on private property, except as to aprons which project into Summit street, and also

excepting the public alley at the south, twenty feet in width, across which the culvert extends.

The city passed the usual resolution providing for the construction of this culvert, therein providing that the cost should be assessed against all of the property within the local assessment district to be established, and describing the property to be so included. Thereafter in due course, and after proper notice, the city passed an ordinance providing for the construction of the improvement, and establishing a local assessment district. The matter then proceeded regularly, the contract was awarded, the work completed and accepted, the assessment-roll prepared, notice thereof duly given, and a hearing had. No objections or protests were filed or made, and the roll was duly confirmed by ordinance.

Appellants seem to rely chiefly upon the regularity of these proceedings, and upon § 9375, Rem. Comp. Stat., which reads:

"Whenever any assessment-roll for local improvements shall have been confirmed by the council or other legislative body of such city or town as herein provided, the regularity, validity and correctness of the proceedings relating to such improvement, and to the assessment therefor, including the action of the council upon such assessment-roll and the confirmation thereof, shall be conclusive in all things upon all parties, and cannot in any manner be contested or questioned in any proceeding whatsoever by any person not filing written objections to such roll in the manner and within the time provided in this act, and not appealing from the action of the council in confirming such assessment-roll in the manner and within the time in this act provided. No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any such assessment, or the sale of any property to pay such assessment, or any certificate of delinquency issued therefor, or the foreclosure of any lien issued therefor: Provided, that this section shall

not be construed as prohibiting the bringing of injunction proceedings to prevent the sale of any real estate upon the grounds (1) that the property about to be sold does not appear upon the assessment-roll, or (2) that said assessment has been paid."

If the city had power to make this improvement and direct that the cost thereof be raised by local assessment, then we think the statute controlling. If it had no jurisdiction or power to initiate the proceedings, then the statute does not apply.

Aberdeen is a city of the second class, and as such its rights, privileges and powers are enumerated and defined in Rem. Comp. Stat., § 9006 *et seq.* It is there provided:

"Every municipal corporation of the second class shall be entitled, the city of —— (naming it), and by such name shall have perpetual succession, may sue and be sued in all courts and places and in all proceedings whatever; and shall have and use a common seal, and alter the same at pleasure; may purchase, receive, have, take, hold, lease, use and enjoy property of every name or description, and control and dispose of the same for the common benefit."

Every other provision of the statute law relating to the powers of such cities, so far as our investigation has gone, either presupposes or expressly states that the powers granted are to be exercised only for the "common benefit," "the use and benefit of the city," and other like terms. Indeed, in the nature of things, the legislature can only, and would only, empower cities to act in the interest of public order and welfare. So when we come to consider the chapter on local improvements, there must be read into the law which grants the power to make such improvements the limitation that it shall be exercised only for a public and never for a private purpose. Take Rem. Comp. Stat., § 9355, under which and succeeding subdivisions the

city now claims it derives the power to act in this matter. That section reads:

"Any city or town shall have power to provide for the protection of such city or town, or any part thereof, from overflow, and to establish, construct and maintain dikes, levees, embankments or other structures and works, or to open, deepen, straighten or otherwise enlarge natural watercourses, waterways and other channels, including the acquisition or damaging of lands, rights of way, rights and property therefor, within or without the corporate limits of such city or town, and to manage, regulate and control the same."

Clearly the power there granted is only to be used for a public purpose, and any other construction would permit the city to take private property for a private use in contravention of the expressed terms of our constitution.

If this be the law, and we are convinced that it is, we must now consider whether or not the improvement here under consideration was for a public purpose and a public benefit, or strictly for a private purpose and a private benefit to the owners of lots 9 and 10 through whose property it conducted the stream. Were the facts doubtful or in dispute we might assume that the city decided that question correctly, but as we read the evidence there is no room for a difference of opinion upon this subject. The city engineer, called as a witness on behalf of appellants, testified:

"A. There was a wooden box about three feet by five feet, three feet vertically and five feet horizontally, conveying the waters of the creek through that property approximately on the line between lots 9 and 10. The box was in a very delapidated condition. The top was broken in, taking with it a lot of the material which had been used to fill the property and thus blocked the channel of the river, or creek. We were having continual complaints from that neighborhood that the waters of the creek were being blocked in that particu-

lar place and demands from the property owners in the neighborhood that the city do take steps to prevent that channel being blocked. It was the natural water course and it was natural that the jurisdiction or city should be called upon to prevent the natural water course from being obstructed. We concluded that a permanent solution of the difficulty there was an enclosing of that channel.''

On cross-examination he testified:

''Q. And what made the trouble there on lot 9 and lot 10 was because this old wooden culvert rotted out and decayed? A. Yes. Q. And fell in? A. Yes. Q. And the dirt and stuff and the improvements that had been made on top of that, the grass and so forth just simply clogged the natural bed of that creek and by reason of that the water backed up? A. It was apt to . block it. Q. That is what blocked it, is it not? A. There is no question about it. Q. And thereupon you decided to put in a concrete culvert? A. We decided that was the permanent solution of that, yes.''

Again, on recross-examination, he said:

''Q. If that creek bed, where it ran through lots 9 and 10 had been kept open the way the creek is kept open at other places there would have been no trouble would there? A. It wasn't kept open. Q. If it was there would have been no trouble would there? A. No, sir, there would not.''

There was much other evidence to the same effect, and none to contradict it. It is equally clear that the concrete culvert was a benefit alone to the adjoining lands, except as it served to abate a nuisance.

To summarize, Wilson creek is a natural water course, non-navigable, and therefore private property. *Watkins v. Dorris,* 24 Wash. 636, 64 Pac. 840, 54 L. R. A. 199; *State ex rel. Davis v. Superior Court,* 84 Wash. 252, 146 Pac. 609. The owner of land through which a natural water course flows may not obstruct the stream

within his boundaries so as to cause damage to others. If he does so he will be liable for the resulting damage. *Winsor v. Hanson,* 40 Wash. 423, 82 Pac. 710; *Radburn v. Fir Tree Lumber Co.,* 83 Wash. 643, 145 Pac. 632; *Dahlgren v. Chicago, Milwaukee & Puget Sound R. Co.,* 85 Wash. 395, 148 Pac. 567. The owners of lots 9 and 10, having seen fit to confine the stream and force it through the wooden culvert, were as much bound to keep that culvert from becoming an obstruction as they were bound not to otherwise obstruct the flow. The obstruction shown was a nuisance and, without doubt, could have been abated as such, and all parties damaged, including the city, had ample remedy against those who maintained the nuisance.

The admitted situation clearly establishes that the improvement was not a public one constructed for the benefit of the public, and therefore the city was without original jurisdiction to proceed, and being without jurisdiction, the action taken was void and subject to attack at any time, notwithstanding § 9375, Rem. Comp. Stat.

The judgment is affirmed.

MAIN, C. J., FULLERTON, and PARKER, JJ., concur.