[No. 19653. *En Banc.* July 30, 1926.]

WALTER C. WOODWARD, *Appellant,* v. THE CITY OF SEATTLE, *Respondent.*[1]

[1] MUNICIPAL CORPORATIONS (400-1)—TORTS—GOVERNMENTAL POWERS —OPERATION OF MOTOR BUSSES. Rem. Comp. Stat., § 9488, authorizing cities to own and operate railways within the city limits, does not empower a city to operate an auto bus line as an extension of its railway system; and doing so being an act *ultra vires,* the city is not liable for personal injuries inflicted through the negligence of the operator of one of its auto busses (HOLCOMB, J. dissents).

Appeal from a judgment of the superior court for King county, Carey, J., entered May 18, 1925, dismissing an action for personal injuries upon sustaining a demurrer to the complaint. Affirmed.

*Riddell & Brackett* and *T. N. Fowler,* for appellant.

*Thomas J. L. Kennedy, Geo. A. Meagher,* and *A. C. Van Soelen,* for respondent.

TOLMAN, C. J.—Appellant, as plaintiff, brought this action to recover damages for personal injuries alleged to have been caused by the negligence of the driver of a motor bus operated by the city of Seattle as a part

[1]Reported in 248 Pac. 73.

of its municipally-owned street railway system. A demurrer having been sustained to his complaint, upon the theory that the operation of the bus was *ultra vires,* appellant filed an amended complaint, pleading, in addition to the facts originally alleged, the city ordinance pursuant to which the bus was operated. A demurrer was again interposed and sustained, the plaintiff elected to stand upon his amended complaint, and the action was dismissed.

The plaintiff, appealing here, presents for determination the question only of the power of the city to enact an ordinance establishing a motor bus service as incidental to the operation of its municipal street railway system.

The occurrence complained of took place on April 27, 1923, after the enactment, but before the taking effect, of chapter 173, Session Laws of 1923, p. 570, which act expressly authorized the city to so operate motor busses. Hence anything here decided can affect only those causes of action which arose prior to June 7, 1923.

Section 9488, Rem. Comp. Stat. [P. C. § 1214], among other things, authorizes any incorporated city or town

" . . . to construct, condemn and purchase, purchase, acquire, add to, maintain, operate or lease cable, electric and other railways within the limits of such city or town for the transportation of freight, and passengers . . . "

Under this authority, the city has purchased and acquired a railway system which has served the city generally; but the city has grown and at the time in question there were parts of it inadequately served by the street railway. The people of the Beacon Hill district, grouped together, purchased and operated a

motor bus transporting passengers to and from the end of the municipal car line. Finding this undertaking burdensome, they proposed to donate their bus to the city, if the city would operate it as theretofore operated. Thereupon the city enacted Ordinance No. 42350, the material portions of which are as follows:

"Whereas, the people residing in the territory adjacent to Beacon avenue between Spokane street and Thirty-ninth avenue have offered to donate to the city of Seattle an auto bus if the city will use the same for transporting residents of the district to a point where they may take passage on the cars of the municipal street railway system, and

"Whereas, such an arrangement will materially add to the receipts of the municipal street railway system, and

"Whereas, it is impracticable at this time to extend the municipal street railway system to the territory in which such traffic originates, now, therefore,

"Be it ordained by the city of Seattle as follows:

"Sec. 1. That the superintendent of public utilities be and he hereby is authorized and directed to establish motor bus service as incident to and in connection with the operation of the municipal street railway system on and over Beacon avenue from Spokane street to Thirty-ninth avenue south on such schedules and at such times as shall be fixed in the discretion of the superintendent of public utilities.

"Sec. 2. That the superintendent of public utilities be and he hereby is authorized and directed for and on behalf of the city of Seattle to accept from Z. B. Rawson, representing the Beacon Avenue Car Extension Club, one Garford auto bus for use in connection with the operation of the municipal street railway system over the route described in section 1 hereof.

"Sec. 3. That the said Z. B. Rawson, representing the Beacon Avenue Car Extension Club, shall furnish a bill of sale showing good title to said bus and that the same is free and clear of any lien or encumbrance before its acceptance by the city of Seattle under the authority of this Ordinance."

Under this ordinance, the city undertook to operate the bus, and while it was so doing, the injury complained of occurred.

[1] The appellant seems to contend that the state has imposed upon or granted to the city certain corporate functions, not only of a governmental but also of a corporate or business nature, to be exercised for the benefit of its citizens, and that a presumption of regularity attaches to its exercise of discretion in all such matters; or, as said in *State v. Pitney*, 79 Wash. 608, 140 Pac. 918, Ann. Cas. 1916A 209:

"If a state of facts can reasonably be presumed to exist which would justify the legislation, the court must presume that it did exist and that the law was passed for that reason. If no state of circumstances could exist to justify the statute, then it may be declared void because in excess of the legislative power."

Conceding that to be a true expression of the rule as applied to the police power, the answer is that the police power is not here involved.

Admittedly, the statutory grant of power we have quoted contains no express authority for the operation of motor busses; and to hold that such power is incidental or implied requires first a finding that it is necessary to the exercise of the powers expressly granted.

In *State ex rel. Huggins v. Bridges*, 97 Wash. 553, 166 Pac. 780, it was held that the municipality had only such implied powers as are indispensable to the declared objects and purposes of the district.

In *State ex rel. Hill v. Port of Seattle*, 104 Wash. 634, 177 Pac. 671, 180 Pac. 137, it was said:

"The rule of construction is that any doubt as to the power of a municipal corporation must be resolved against the municipality—only such powers as are ex-

pressly granted, or such as are necessarily incident to its granted power, will be sustained, for the policy of the law has always been to limit, rather than to extend, the proprietary functions of a municipal corporation.''

The power granted by the statute is restricted to railways; and to say that the term ''railways'' may be construed to include motor busses and motor-bus routes, is to say that the term also includes all manner of transportation, including that by water and by air. It is common knowledge that, for many years, street railway systems have been operated without the operation of motor busses in connection, and this is conclusive that such operation is not indispensable. Appellant cites a line of cases which hold to a rule of liberal construction when the defense of *ultra vires* is interposed; but that line of decisions is differentiated by the late case of *Barr v. Cowlitz County,* 127 Wash. 14, 220 Pac. 6, in which it was said, quoting from an earlier case:

'' 'In discussing the liability of municipal corporations for acts committed by their officers which are defended on the ground of the same being *ultra vires,* we must not lose sight of the distinction which exists between acts which are absolutely *ultra vires* by reason of the corporation having no authority to act on the subject-matter—it being wholly beyond the scope of its powers—and those acts which in a sense are termed *ultra vires,* where the body has jurisdiction of the subject-matter, but in the execution of its authority, trespasses upon the rights of others. In the first instance it is conceded by all authority that the corporation is not liable, . . .''

The question here presented falls within the rule there first stated, while appellant's authorities, as we read them, have reference to the second situation.

While it may be that these views will deprive appellant of a remedy against any save those who are

financially unable to respond, yet the larger good of a settled rule as to the powers of a municipality must prevail.

The judgment appealed from is affirmed.

FULLERTON, PARKER, ASKREN, MAIN, MITCHELL, BRIDGES, and MACKINTOSH, JJ., concur.

HOLCOMB, J. (dissenting)—The prevailing opinion is correct and able, if applied to an appropriate case, where strictness of construction is required. Such a case would be one testing and checking the use of power by a municipality not delegated to it by the statute. Such are all the cases cited in the prevailing opinion. In all such cases to test the use of *ultra vires* power it cannot be questioned that "a doubtful power is a power denied."

The city was granted power by statute to carry urban passengers by a railway system. It acquired the system, and thereafter an emergency was created by the growth of an urban district into a populous locality requiring transportation. The city also desired the revenues. Being without funds to extend its actual railway tracks into this newly populous district, the city extended it, in effect, by the bus system, which is nothing more than an adjunct incident to the street railway system,—a part of its general traffic system. That it is agreeable to public policy is shown by the enactment of ch. 173, Laws of 1923, p. 570, granting the power expressly. This is not a suit upon a contract with the city, in which case, under our statutes, the plea of *ultra vires* could be interposed, but a suit for negligence in the operation of an instrumentality belonging to the city.

Our statute granting authority to maintain actions against municipalities (Rem. Comp. Stat., § 951) [P. C. § 8394], provides:

"An action may be maintained against a county, or other of the public corporations mentioned or described in the preceding section, either upon a contract made by such county or other public corporation in its corporate character, and within the scope of its authority, or for an injury to the rights of the plaintiff arising from some act or omission of such county or other public corporation."

Long ago it was held by this court that "not only is provision made for an action against a county upon contract within the scope of its authority, but for injury to plaintiff arising from some act or omission of the county." *Kirtley v. Spokane County,* 20 Wash. 111, 54 Pac. 936.

Cities are included within the same category of corporations as counties, in the matter of maintaining actions against them. We have also held that it is a rule of construction that statutes providing remedies against either public or private wrongs are to be liberally construed. *State ex rel. King County v. Superior Court,* 104 Wash. 268, 176 Pac. 352.

The rule is general that the defense of *ultra vires* can be interposed only where the act complained of was wholly beyond the powers of the municipality. If the wrongful act in question is one which the municipality had the right to do under some circumstances or in some manner, it is not *ultra vires. Boise Development Co. v. Boise City,* 30 Idaho 675, 167 Pac. 1032, and cases and texts cited.

The rule of *ultra vires* ought to be reasonably, and not unreasonably, understood and applied, and whatever may be fairly regarded as incidental to, and consequential upon, those things which the legislature has authorized municipal corporations to do ought not, unless expressly prohibited, be held by judicial construction to be *ultra vires. Gottlieb-Knabe Co. v.*

*Macklin,* 109 Md. 429, 71 Atl. 949, 31 L. R. A. (N. S.) 580; *Atlas Life Ins. Co. v. Board of Education of City of Tulsa,* 83 Okl. 12, 200 Pac. 171.

Had appellant bought a ticket entitling him to transportation in part over this bus line and had been refused carriage or ejected from the bus, or something of that kind, the city probably could rightfully have interposed the plea of *ultra vires* under our statute; but where, as here, appellant was injured by the instrumentality used by respondent in its traffic system, through negligence, i. e., "an act or omission" of the municipality, it seems to me that it is stretching the doctrine of *ultra vires* to a very great extent to hold that the municipality is not liable.

I therefore dissent.