[No. 33341. Department Two. January 5, 1956.]

LENA SIGURDSON, *Respondent,* v. THE CITY OF SEATTLE, *Appellant.*[1]

[1]Reported in 292 P. (2d) 214.

*A. C. Van Soelen* and *C. C. McCullough,* for appellant.

*Kumm, Copass & Cook,* for respondent.

OTT, J.—In 1936, the works progress administration, a Federal agency, constructed and installed a drainage system on property owned by King county, located in Seattle between Alki avenue and the intersection of Sunset avenue and West Seattle street. The system extends westward from a spring below Sunset avenue, and empties into Puget Sound. After the drainage system was constructed, the maintenance thereof was assumed by the city.

The terrain at the base of the drain, from Alki avenue east, is comparatively level for one hundred twenty feet, the depth of Lena Sigurdson's lot, except that, near the rear, there is a rise of approximately ten feet. From the rear of her lot, the elevation increases abruptly approximately two hundred ten feet in a distance of approximately two hundred sixty feet.

The aforementioned drainage system consists of an eight-inch wooden pipe running from Puget Sound, beneath Alki avenue, eastward across the Sigurdson lot, connecting with a sand box approximately one hundred feet to the rear and

east of her property, thence to a second sand box, in a natural ravine, approximately sixty feet further east up the incline. The spring is located approximately sixty feet up the ravine from the second sand box. Spring and surface waters flow down the ravine, through the two sand boxes, into the eight-inch wooden pipe, and then out to Puget Sound.

The city maintains another drainage system in the area which drains the surface waters from Sunset avenue into the main line of the Arkansas street sewer at the intersection of Sunset avenue and West Seattle street. From this point, the sewer line extends westward approximately one hundred twenty feet down the steep incline to a point referred to as manhole 155, thence the line veers northwestwardly away from the property in question. The terrain at manhole 155 is such that any water which may escape from the sewer flows down a dry ravine and into the lower sand box. The soil in the area consists of a substratum of blue clay, an overlay of sandy soil, and a top soil composed primarily of leaf mold. The surface growth is underbrush and trees natural to the area.

The steepness of the terrain and the soil texture have presented a drainage and slide problem for many years. There were slides in that area in the years 1937, 1941, 1948, and 1950 which necessitated the city's repairing or replacing the drainage pipes when they were disrupted by the slides.

The drainage system subsequently failed on two occasions, January 6 and 22, 1954. On both occasions, the city made substantial repairs.

On February 12, 1954, the wooden drain pipe again broke or parted at a point located approximately sixty feet behind the Sigurdson property. Water gushed from the pipe at the break, and Miss Sigurdson notified the city before ten o'clock a. m. The city workmen who answered the call did not stop the flow of water from the breach, and permitted the water to saturate the hillside. At 4:55 a. m., February 13th, the slide occurred which caused extensive damage to the Sigurdson property.

An examination of the area at manhole 155, made shortly after the slide by an engineer employed by Miss Sigurdson, showed evidence of erosion or wash below the manhole, which flow was down the ravine to the lower sand box. There was no evidence of erosion or wash above the manhole. The testimony of the foreman for the city's engineering department corroborated the engineer's findings.

Lena Sigurdson commenced this action to recover the cost of repairs to her house and lot occasioned by the damage caused by the landslide. Her complaint alleged that the city was negligent in failing to maintain and keep in repair the drainage system, in failing to take reasonable precautions to prevent the saturation of the slope, and in failing to protect her property from damage occasioned by the slide. The city denied liability.

The jury returned a verdict in favor of the plaintiff in the sum of twenty-six hundred dollars. From the judgment entered upon the verdict, the city has appealed, making seven assignments of error.

The first four assignments of error raise the issue of the sufficiency of the evidence to establish liability. Appellant's principal contention is that, since it did not install the drainage system, it is not responsible for it. Appellant further contends that, even though it did make certain repairs on the Federally-installed drainage system, it is not liable if the repairs proved inadequate or if the repair work was negligently done, for the reason that it had no duty to perform any service to benefit only this privately owned property.

The basis of this action is negligence. Negligence, as applied to a municipality in the performance of a corporate or ministerial function, is an unintentional breach of a legal duty, causing damage reasonably foreseeable, without which breach the damage could not occur. *Burr v. Clark*, 30 Wn. (2d) 149, 190 P. (2d) 769 (1948). To establish negligence under this definition, issues of both law and fact are involved.

The legal issues are, (1) was the function a corporate or

ministerial function upon which liability may be incurred, as opposed to a governmental function to which the rule of immunity applies, and (2) was there a legal duty on the part of the municipality to perform the act, the nonperformance of which is alleged to have caused the damage?

The factual issues are, (1) did the city, in the performance of its duty, if any, exercise ordinary and reasonable care, (2) did the failure to exercise reasonable care constitute a breach or failure of the duty to perform, (3) could the city reasonably foresee that such failure would cause damage or injury to another, and (4) was the failure to perform the duty the proximate cause of the damage?

With regard to the first question of law above set out, we have held that a municipality is liable for injuries resulting from negligence in the performance of ministerial and corporate acts relating to the improvement and maintenance of public streets. *Bradshaw v. Seattle,* 43 Wn. (2d) 766, 264 P. (2d) 265 (1953).

It is generally held that a municipality, in maintaining drains and sewers, acts in its corporate and ministerial capacity, and is liable for negligence resulting in injury relating thereto. 18 McQuillin, Municipal Corporations (3d ed.), 489, § 53.125.

We can see no substantial difference between the function of improving and maintaining public streets and that of improving and maintaining drains such as we are concerned with here, and which are necessarily ancillary to the function of maintaining the streets.

We therefore conclude that the improvement and maintenance of the drainage system here in question was a corporate and ministerial function.

The second question of law is, did the city owe a duty to maintain the drainage system in question?

The appellant city contends that there is no such duty, and cites *Wiley v. Aberdeen,* 123 Wash. 539, 212 Pac. 1049 (1923). The *Wiley* case determined that the replacement of a culvert on private property was a private rather than a public purpose, and that the city was without jurisdiction

to expend public funds to accomplish a private purpose. In the *Wiley* case, the city had never maintained or repaired the existing culvert. In the case at bar, the city had maintained the drainage system for eighteen years. The area is admittedly a slide area, and, without the drain, it well could constitute a hazard to the public streets. An assistant city engineer, in his testimony, referred to this hazard as a nuisance.

Sunset avenue traverses the crest of the area, and Alki avenue is located at the base of the steep incline. It is clear that the prevention of slides from below Sunset avenue and the prevention of slides onto Alki avenue are necessary to the maintenance of these streets and are, therefore, public purposes. This drain is a preventive measure against slides. The drain controls and concentrates the flow of water from the area east of Alki avenue into a single pipe which continues beneath the streets to Puget Sound. Had the water been permitted to flow unrestrained down the hillside, the owners of the private property in the comparatively flat area below, in the performance of their common-law right to fend off surface waters, would have forced the water to flow around their properties and onto Alki avenue. Thus the flow would have reached the avenue from several locations, and the city then would have been presented with the problem of draining this water from the street. Being confronted with this problem, the city elected, as it had a right to do, to divert the flow of water from its source into a pipe beneath the street. In either event, the disposal of the drainage water at Alki avenue was a public purpose, and public funds can be expended in the performance of a public purpose.

Here, the city designated the place where the drain was to be constructed upon the property of another. Thereafter, it assumed the control and management of the system, as is shown by the following testimony of Mr. Fitch, an assistant city engineer:

"Q. Then, after the W.P.A. pulled out who took charge of the maintenance of this system? A. The function then was to transfer that to the maintenance division of the City

Engineer's office. Q. Very well. A. And they handled it from there on."

That the city "handled it from there on" is shown by the fact that it made extensive repairs to the system in 1937, 1941, 1948, and 1950.

"Municipal liability is restricted to the public sewers which the corporation controls; it does not extend to private sewers and drains *which it did not construct, nor accept.* . . . But if sewers, drains or culverts constructed by third persons are, in some legal manner, adopted by the municipality as a part of its sewerage or drainage system, *or the municipality assumes control and management thereof, the municipality becomes liable for injuries resulting therefrom, since in such cases it is immaterial by whom the sewer, drain or culvert was constructed.*" (Italics ours.) 18 McQuillin, Municipal Corporations (3d ed.), 467, § 53.118.

Applying this rule to the case at bar, we conclude that it is immaterial who constructed the drainage system. The duty of the appellant to repair and maintain it is established by evidence that the city assumed the control and management thereof for a period of approximately eighteen years.

The evidence does not indicate what benefit to private property, if any, was effected by the construction of the drain. The concentration of water into a single stream would create a greater hazard to the private property, upon which the flow was thus concentrated, than would the normal flow. We cannot say that the concentration of this water, by the establishment of the drain, so that it flowed upon the land of respondent was a benefit to her property. In fact, such a concentration would be a greater hazard to her. There was no showing that the establishment of the drain was of any benefit to the King county property upon which the system was constructed.

Since there was no showing of benefit to private property, and the evidence discloses that the works progress administration constructed the drain and that the city immediately assumed the maintenance of the completed project, both the Federal administration and the municipal authorities,

by their acts and conduct, established the project to be solely for a public purpose. If any private benefit resulted, it was incidental to the primary purpose.

Appellant cites *Woodward v. Seattle,* 140 Wash. 83, 248 Pac. 73 (1926). In that case, it was held that the action of the municipality was *ultra vires.* We are concerned here with acts that are within the general powers of the municipality, which acts, being for a public purpose, are not *ultra vires.* The rule announced in the *Woodward* case is not applicable.

We conclude, therefore, that the city, having adopted the drainage system, incurred a duty to maintain it. The issue of whether the city legally could enter upon King county property for the purpose of maintaining the drain in question is not before us, for the reason that the property owners, being the only parties who could complain, have not done so.

Was there sufficient evidence to support a finding of negligence?

The evidence disclosed that the eight-inch wooden pipe was not sufficient to carry the drainage load; that the wooden pipe broke frequently; that the terrain was steep and precipitous, and particularly so at the point where the February 12th break occurred; that the soil texture was subject to slides when saturated with water; that an unrestrained eight-inch flow of water would saturate the area, and that there had been frequent slides. On February 12th, the city was given notice of the break in the pipe. It responded to the call and knowingly permitted the water to flow at least partially unrestrained. The earth slide which occurred on the morning of February 13th originated directly beneath the break in the pipe.

The evidence as to the source of the water which overloaded the eight-inch pipe was conflicting. The testimony of respondent's expert witness was that the flow from the spring, approximately five gallons per minute, plus the run-off of precipitation from the eight tenths of an acre, as shown by the rainfall chart, did not produce a sufficient

flow to overload the pipe. There was evidence of flow from manhole 155, and that this was the only other source of water available. Hence, there was sufficient evidence from which the jury could infer that the overload came from manhole 155.

It was for the jury to determine, from the evidence, whether these acts constituted negligence, whether the damage was reasonably foreseeable, and whether this negligence was the proximate cause of the slide. Unless this court can say, as a matter of law, that there is neither evidence nor reasonable inference therefrom sufficient to sustain the verdict, it will not be disturbed. *James v. Ellis,* 44 Wn. (2d) 599, 269 P. (2d) 573 (1954), and case cited.

The record establishes that there was sufficient evidence to support the verdict of the jury. We find no merit in appellant's assignments of error Nos. 1 through 4.

Assignment of error No. 5 relates to the giving of, and failure to give, certain instructions.

By instruction No. 7, the court instructed the jury that there was no duty, under the facts of this case, resting upon the respondent to repair the drain. The objection of appellant to this instruction was that respondent owed a duty to minimize the damage.

The respondent had no duty to repair the drainage system. She promptly notified the city of the broken pipe. Her duty was to protect her property against the normal flow of surface waters. Here, the city had collected the surface waters and discharged them in a concentrated and destructive stream, immediately behind her property. It is not this type of flow which property owners must guard against and fend off. See *Wood v. Tacoma,* 66 Wash. 266, 119 Pac. 859 (1911), and *Tope v. King County,* 189 Wash. 463, 65 P. (2d) 1283 (1937). Further, there is no evidence in the record that drainage waters came upon respondent's property and caused damage. It was the earth slide that caused the damage.

At the time the exception to this instruction was made, the reason given the trial court was not the reason

urged before this court. The exception therefore was insufficient. *Gile v. Nielsen,* 20 Wn. (2d) 1, 10, 145 P. (2d) 288 (1944).

Instruction No. 12 deals with the duty of the city, after it had assumed control and management of the drainage system, to maintain and repair it. The giving of this instruction was excepted to upon the same grounds stated in the motion questioning the sufficiency of the evidence. In view of our conclusions expressed herein, the instruction properly stated the law as applied to the facts.

With regard to appellant's proposed instruction No. 8, what we have said concerning instruction No. 12 applies to the refusal of the court to give this instruction. As applied to the facts of this case, it is not a correct statement of the law.

We find no error in assignment No. 5.

Assignment No. 6 relates to a contention that it was error to admit any testimony concerning the city's alleged negligence in failing to keep the Arkansas sewer system in proper repair, and the inference from that evidence that some of the seepage from that system contributed to the flow that overloaded the wood stave pipe and caused the breach therein.

Appellant's first objection was that the Arkansas sewer system was not within the pleadings. Exhibit No. 16 shows that the Arkansas sewer system contains three inlets on Sunset avenue, which drain the street area and empty into the pipe leading directly to manhole 155. There was evidence of seepage and of a defect in the manhole. The Arkansas street sewer is definitely a part of the over-all drainage system, and is within the pleadings, being paragraph No. 5 (a) of the complaint.

The second objection is that respondent's expert opinion evidence was speculative and conjectural. The expert's testimony was limited to his examination of the area, and, in his opinion, the only source of the water which overburdened the wooden drainage system was seepage from the manhole. The conclusions of the witness were

165

based upon his subjective and objective findings. The testimony was admissible. The weight, if any, to be given such testimony is for the jury to determine.

Finally, the appellant assigns as error the failure to grant its motion for a new trial. The appellant set out all of the statutory grounds in its motion. In its argument before this court and in the appeal briefs, no specific ground is relied upon.

We have examined the record in the light of each of the grounds set out in the motion and find no merit in this assignment of error.

The judgment is affirmed.

HAMLEY, C. J., FINLEY, WEAVER, and ROSELLINI, JJ., concur.

[1]Reported in 292 P. (2d) 205.