[No. 33531. Department Two. November 15, 1956.]

KATHERINE PAPAC, *Respondent*, v. THE CITY OF MONTESANO, *Appellant.*[1]

[1]Reported in 303 P. (2d) 654.

*O. M. Nelson,* for appellant.

*John E. Close* and *Paul B. Fournier,* for respondent.

Rosellini, J.—The plaintiff recovered judgment in the trial court in the amount of three thousand dollars, the court having found that the defendant city had taken her property for public use and was maintaining a nuisance thereon, causing damage to her house. The city has appealed, assigning error to all of the material findings and conclusions.

The testimony showed that the home now owned by the plaintiff was built in the year 1911 over a gully or ravine,

which is the east branch of Sylvia creek and is a natural drainage for certain portions of the city of Montesano. In the year 1913, the city of Montesano embarked upon a street building program whereby the grade of certain streets was brought up to level and new streets were constructed. Included in this project was Seventh street, which crossed this branch of Sylvia creek fifty feet east of the plaintiff's property, which was then owned by one Mitchell Zvono. One lot intervened between this property and Seventh street. We will refer to this lot hereafter as the Bogdanovich property and to the plaintiff's property as the Papac property.

In grading Seventh street, the city placed a tile drain pipe in the creek bed and filled the ravine to bring the street up to level. The fill was extended over the Bogdanovich property; and apparently some fill was also placed on the Papac property, although there was no direct evidence that this was done by the city. The then owner of the Bogdanovich property placed a tile drain, or culvert, under the fill, connecting with the city's culvert at Seventh street.

In its street improvement program, the city graded Fourth street three blocks east of Seventh. Mitchell Zvono testified that this increased the flow of water into the natural drainage of the east branch of Sylvia creek. This testimony was contradicted by an engineer who testified for the defendant. The trial court found that the grading of Fourth street almost doubled the flow of water in the east branch of Sylvia creek.

When the plaintiff's house was built in 1911, a cedar plank culvert, which was sufficient to take care of the natural flow of water under the house, was built across the Papac property.

In 1916, Zvono and Papac, who later became the plaintiff's husband and is now deceased, left Montesano for Montana and Alaska. When Zvono returned in 1919, he found a large hole in the fill. He complained to the mayor, who referred him to what he described as the "ditch committee." The old culvert was replaced by the city with a culvert made of fir planking, and the hole was filled. In 1933, the city, through

a public works project, replaced the fir culvert with two twelve-inch used city water pipes, which were made of wood and wrapped with wire.

The Papacs were deeded a one-half interest in the property in 1920, and the remaining interest in 1930.

Sometime between 1946 and 1948, a break occurred in one of the drain pipes. The pipes have since rotted out, and the house has deteriorated rapidly. The planks in the basement (constructed sometime between 1930 and 1940) have rotted, molded, and become termite-ridden, and the house has shifted on its foundation. The evidence regarding the causative factors was conflicting; but the trial court found that the damage was caused by the water overflowing from the rotted drain pipes. There was testimony that during the rainy season the ground is wet under the house, due to the fact that the water flows outside the pipes.

The city has no easement across the Papac property. There was no evidence that the work done there was authorized by the city council or that similar work had been done on other private property. Neither was there any evidence that the placing of a drain across the Papac property would benefit the public.

The trial court found that the damage in 1919 to the original culvert was due to the fill work and the increased flow of water, and that from that date the city assumed the burden of maintaining the culvert. The court concluded that the city, by allowing diverted drainage waters to flow uncontrolled over the plaintiff's land, is maintaining a public nuisance, which should be abated. It ordered the abatement of the nuisance either by the construction of adequate drainage across the plaintiff's property or by diverting the flow of water away from the property.

There is no question but that the gully over which the plaintiff's predecessor built his house is a natural drainage system, and there is nothing in the record to support the trial court's finding that the flow of water in this gully was almost doubled by the grading of Fourth street. An engineer called by the defendant testified that the land east of

Fourth street is lower than the grade of the street and that water would tend to drain east of the street as well as west. Zvono testified that there had always been drainage from east of Fourth street, but that it had increased after the street was graded. He did not attempt to say how much the flow had increased. There was no evidence that the increased flow would tend to cause a wooden culvert to rot. On the other hand, there was testimony by several witnesses for both parties that rotting is caused by the alternate moistening and drying out of wood, a condition which occurs as a result of the wet and dry seasons. We will assume, however, that the evidence was sufficient to support a finding that the flow of water was substantially increased and that it caused the wooden pipes to deteriorate more rapidly than they otherwise would have. The defendant maintains that the plaintiff's cause of action for such damage is barred by the statute of limitations.

 Where property is taken or damaged in the exercise of the power of eminent domain, the three-year statute of limitations applies. *Gillam v. Centralia*, 14 Wn. (2d) 523, 128 P. (2d) 661. The damaging of land by the construction of a street or highway, causing it to be flooded by surface waters, is a taking and damaging, within the meaning of Art. I, § 16 (amendment 9) of the constitution. *Harkoff v. Whatcom County*, 40 Wn. (2d) 147, 241 P. (2d) 932; *Ulery v. Kitsap County*, 188 Wash. 519, 63 P. (2d) 352. The period of limitation begins to run when the project causing the damage is completed if substantial damage has already occurred (*Gillam v. Centralia, supra*), or when the first substantial injury is sustained. See *Jacobs v. Seattle*, 100 Wash. 524, 171 Pac. 662. If the injury is permanent, the measure of damages is generally the difference between the market value of the property immediately before, and immediately after, the damage; if it is temporary, the measure of damages is generally the cost of reconstruction, with compensation for loss of use in a proper case. *Harkoff v. Whatcom County, supra*.

 It is apparent that the first substantial damage,

occasioned by the regrading of Fourth street and the placing of the fill on the Papac property, occurred sometime prior to 1919. Whether the placing of the fill be regarded as a tortious invasion (in which case the three-year statute would apply, under the provisions of Rem. Rev. Stat. (Sup.), § 159 [cf. RCW 4.16.080]) or a taking or damaging under the power of eminent domain, any cause of action based thereon is long since barred. Furthermore, it appears from the testimony of the plaintiff's predecessor in title, Zvono, that any damage resulting from these actions was compromised and settled when the city replaced the pipe and restored the fill, and this work was accepted as satisfactory.

If the plaintiff has a cause of action against the city now, it must be based upon an undertaking by the city to maintain the drain pipes across the Papac property. It was upon this theory that the trial court acted when it awarded the damages claimed by the plaintiff.

In this regard, it must be borne in mind that this is not a case where it is claimed that the city has dammed up, or obstructed, the natural flow of water. The witnesses testified that the water flows freely through the culvert under Seventh street and the tile, or concrete, culvert constructed by the adjoining owners on their property. The complaint is that the wooden pipes which the city placed across the Papac property in 1933 (as a replacement of the deteriorated wooden culvert placed there by the city in 1919, which replaced the original culvert built by the owner) have deteriorated and broken down, so that the water flows through its natural course outside the pipes rather than inside them, with the result that the timbers of the house are exposed to the flowing water.

Cases such as *Ronkosky v. Tacoma*, 71 Wash. 148, 128 Pac. 2, cited by the plaintiff, are therefore not in point. The *Ronkosky* case dealt with the liability of a city which had caused a culvert and fill to be constructed on one of its streets and had allowed the culvert to become obstructed, causing the plaintiff's property to be flooded and destroyed. We held that where a street is improved across a natural water

course, it is incumbent upon the municipality not only to make an adequate bridge culvert or passage for the water in the first instance, but to keep it in such condition that it shall not obstruct the stream thereafter. It was this duty which the city of Montesano performed when it improved Seventh street, placed the culvert beneath it to carry the natural flow of water, and kept the culvert free of obstruction.

The plaintiff urges that the rule stated in 38 Am. Jur. 342, § 637, is applicable here. This section reads:

"In the application of the principles governing municipal liability for injuries resulting from defects or obstructions in sewers, discussed in the preceding section, it is immaterial whether the actual construction of the sewer was done by the municipality or by a private individual, if it is under control of the municipality at the time. Moreover, *the municipality is liable regardless of where the sewer is constructed, whether upon municipal property or private property.* The fact that the particular drain may be a natural watercourse rather than an artificial construction does not alter the rule of municipal liability for damage resulting from obstructions, so long as the sewer or drain has been adopted by the municipality for drainage purposes and it has assumed control over it. The fact that the damage results from an extraordinary rainfall does not relieve the municipality from liability if the damage would not have resulted but for the obstruction, or if the obstruction contributed to the injury." (Italics ours.)

*City of Fort Wayne v. Coombs,* 107 Ind. 75, 7 N. E. 743, 57 Am. Rep. 82, is cited as authority for the italicized portion of the above quotation. The court held in that case that the city was within its rights when it constructed a sewer under its highway, even though the highway crossed a privately-owned canal; and the city was liable for its negligence in constructing the sewer.

The drainage system involved in this action is not upon a public highway, and the city has acquired no easement across the private property involved. In her testimony, the plaintiff made it plain that she had refused to allow the city to replace the culvert until it had paid her damages, cer-

tainly an indication that she did not regard the culvert as being under the control of the city.

The laying of the culvert underneath Seventh street was, of course, necessary to the improvement of the street, but it did not constitute an adoption of the natural waterway as a municipal drainage system. The record is silent as to the circumstances attending the laying of the pipes on the Papac property in 1933, and there is nothing to indicate that it was done as a part of a general improvement of the natural drainage system. This case is therefore distinguishable from the Indiana case cited in 38 Am. Jur., *supra*.

Likewise, the cases cited in 18 McQuillin, Municipal Corporations (3d. ed.), 467, § 53.118 (in support of the author's statement that where a municipality assumes control and management of a sewer or drainage system, it is immaterial by whom the system was constructed) involve facts very different from those we are dealing with here and cannot control our decision.

■ This court has held that the power given to cities by statute (RCW 35.21.090, Rem. Rev. Stat., § 9355), to construct dikes or improve natural water courses, is confined to public purposes; and a city is not authorized to put in a culvert on private property to keep open a nonnavigable natural watercourse which has become obstructed by private culverts and the failure of private owners to properly maintain the same. *Wiley v. Aberdeen*, 123 Wash. 539, 212 Pac. 1049. Here, as in that case, no public purpose was shown. The plaintiff merely contends that by placing the culvert on her property, the city assumed the duty of maintaining it. No authority is offered for this proposition. *Wiley v. Aberdeen* is directly contrary, as is *Woodward v. Seattle,* 140 Wash. 83, 248 Pac. 73, wherein we held that a city is not liable for injuries resulting from an *ultra vires* act, that is, for an act performed outside the scope of its statutory authority.

The plaintiff cites *Sigurdson v. Seattle,* 48 Wn. (2d) 155, 292 P. (2d) 214, as controlling the issue presented here. In the *Sigurdson* case, a drain had been constructed on

county property by the WPA, and its maintenance had been assumed by the city. A break occurred in the drain, above the plaintiff's property, causing the hillside on which it was located to become saturated with water, which resulted in a landslide that severely damaged the plaintiff's property. We held that the drain was maintained for a public purpose, since without it the area constituted a hazard to the city streets; that if any private benefit resulted from the maintenance of the drain, it was only incidental, and distingished *Wiley v. Aberdeen, supra,* on that ground. While we also stated that in the *Wiley* case, the city had never maintained the culvert in question, it was not on this distinction that the case was decided. We assumed that the city was authorized to maintain the drain on county property. *Sigurdson v. Seattle* is not authority for the proposition that a city, by maintaining a drain on private property for a private benefit, may become liable to the property owner for damage resulting from defects in, or the failure to maintain, the drain.

So far as the record reveals, the improvements which the city placed upon the Papac property in 1919 and those placed there in 1933 were undertaken gratuitously. In neither case could the act of installing them result in a liability to maintain them, when they were neither authorized by official action nor installed for a public purpose.

The judgment is reversed and the mandatory injunction dissolved.

OTT, MALLERY, HILL, and WEAVER, JJ., concur.

---

January 17, 1957. Petition for rehearing denied.