[No. 2381-3.   Division Three.   January 2, 1979.]

JOHN S. SADO, ET AL, *Appellants*, CECIL STOCKNER, ET AL, *Respondents*, v. THE CITY OF SPOKANE, *Respondent*.

*Fish & Schultz, James A. Fish,* and *Stanley R. Schultz,* for appellants.

*MacGillivray & Jones, Dan W. Keefe,* and *Floyd Ivey,* for respondents.

MUNSON, C.J.—In January 1974, Latah Creek, a stream meandering through the southwest section of the city of Spokane, flooded and damaged private property adjoining the creek.[1] Nine property owners brought suit against the City. Five of those property owners, hereinafter referred to as downstream owners, alleged the City negligently constructed and maintained an embankment which failed to confine the course of the creek at the time of the flood causing severe erosion of their property.[2] At the close of the downstream owners' case, the trial court granted the City's motion to dismiss.

---

[1]The flow of the creek has, in the past, fluctuated from 2 cubic feet per second to 20,000 cubic feet per second within 48 hours. The 1974 peak was 17,700 cubic feet per second.

[2]Three of the property owners claimed damage due to the overflow; two others claimed damage due to diversion of the creek.

Several city employees testified that from 1949 to 1974 the City had been involved periodically in extensive dumping and leveling of riprap in the area of Latah Creek which is at issue here. In 1949 the embankment was about 4 feet high. As the dumping of waste and debris progressed, barricades with padlocks appeared where the city trucks entered. Testimony indicated only the City had access through these barricades. In 1963 the City arranged with the state highway department and a private contractor to have city trucks haul rock into this area from a nearby highway construction project. By 1974 the embankment had increased in size to 12 feet wide and at least 300 feet long when it was washed out during the flood.

The construction of dikes, levees and embankments, as well as straightening and enlarging watercourses which are subject to flooding, is a legitimate exercise of a city's police power. RCW 35.21.090. Whether a city elects to act pursuant to its authority is discretionary; the statute contains no mandate to construct any improvement, much less one of specific character and design. But if a city interferes with the channel of a watercourse and injures property, there may be liability. *See* 18 E. McQuillin, *Municipal Corporations* § 53.133, at 495 (3d ed. 1977).

The City contends the embankment benefited only a few private property owners and that no ordinance nor resolution authorized such construction; therefore, the construction of the embankment was for a private and not a public purpose. We do not view public purpose so narrowly. The City correctly notes that it is not liable for constructing and maintaining improvements solely for the benefit of private property owners. *Papac v. Montesano,* 49 Wn.2d 484, 303 P.2d 654 (1956); *Wiley v. Aberdeen,* 123 Wash. 539, 212 P. 1049 (1923). (In these cases, the city replaced and maintained culverts for property owners on their private property.) However, here the City was involved in flood control activities in this area of Latah Creek for nearly 25 years with at least unofficial approval from vari-

ous city departments.[3] Activities of a municipal corporation do not have to benefit the entire city population in order to constitute a public purpose. Neither the size of the project nor the number of people directly served determines whether a city's acts are for a public or a private purpose. If a public purpose exists when a city builds improvements to protect public streets, then the protection of landowners and their property in a flood area could be deemed a public purpose. *See Sigurdson v. Seattle,* 48 Wn.2d 155, 292 P.2d 214 (1956).[4] We cannot say as a matter of law that because the activity of the City occurred on private property, therefore there was no public purpose. What constitutes a public purpose has eluded precise judicial definition and must be left to each case to be determined by its own peculiar circumstances. *See* 2 E. McQuillin, *Municipal Corporations* § 10.31, at 817–18 (3d ed. 1966). The question is one of fact to be determined by the jury.

▇ The City also argues that its acts were gratuitous, thus without legal obligation or liability. We disagree. The trial court found that the "good Samaritan deeds" of the City were not sufficient evidence to establish the existence of a legal duty. However, the voluntary assumption of a duty by affirmative conduct will give rise to liability if the performance is not done with reasonable care. *Brown v. MacPherson's, Inc.,* 86 Wn.2d 293, 545 P.2d 13 (1975); *see also* W. Prosser, *The Law of Torts* § 56, at 343–48 (4th ed. 1971). A city is liable for damages arising out of its tortious conduct. RCW 4.96.010. In order to recover in negligence against a municipal corporation, plaintiffs must prove all the elements of tort, including the existence of a duty owed them. *Georges v. Tudor,* 16 Wn. App. 407, 556 P.2d 564 (1976).

---

[3] According to the City's brief, the defense of ultra vires was neither raised in its pleadings nor argued. Therefore, we do not address that issue.

[4] Although the governmental activity in *Sigurdson* occurred on public property, we do not find that public ownership is dispositive of the public-purpose issue.

There was conflicting testimony as to whether the embankment was improperly designed and maintained. There is sufficient evidence to submit to a jury the factual issue of whether the affirmative acts of the City in the construction and maintenance of the embankment gave rise to a legal duty and whether the City failed to use reasonable care in the building and maintenance of this embankment. *See Hayashi v. Alameda County Flood Control & Water Conservation Dist.*, 167 Cal. App. 2d 584, 334 P.2d 1048 (1959). Given the gratuitous acts of the City over a period of 25 years, we hold there was sufficient evidence of both a public purpose and a duty to present a question of fact to the jury.

After dismissal of the five downstream owners, the case of the four remaining plaintiffs, hereinafter referred to as upstream owners, continued. The jury returned a verdict in their favor. The upstream owners had claimed that during the 1974 flood a settling pond built by the City on public property upstream from the embankment previously discussed had altered the course of the creek and the increased velocity of water caused flooding of their property.

The City cross–appeals contending the trial court erred in including plaintiffs' instruction No. 6[5] and in excluding

---

[5] "An act of God is a natural phenomenon which caused the injury and which is so far outside the range of human experience that ordinary care did not require that it should be anticipated or provided against. Merely because a natural phenomenon is unusual or of rare occurrence is not sufficient to find that such natural phenomenon constituted an act of God.

"When two causes combine to produce an injury, both of which are, in their nature, proximate and contributory to the injury, one being a culpable negligent act of the City of Spokane and the other being an act of God for which neither party is responsible, then the City of Spokane is liable for such loss as is caused by its own act concurring with the act of God, provided the loss would not have been sustained but for such negligence of defendant.

"Therefore, if you find that the flooding of Latah Creek in January, 1974 is a proximate cause of the damage to the plaintiff's property and if you find that the negligent act or acts of the City of Spokane was or were also a proximate cause of

the City's proposed instructions Nos. 5a and 5b.[6]

The City presented evidence that the flood of Latah Creek was unprecedented in nature and, based upon that theory, submitted instruction No. 5a. The trial court, however, submitted plaintiffs' instruction No. 6, which included not only a paragraph on an act of God as an unprecedented event, but also included within the instruction that if the jury found an act of God as a concurring cause with the negligent act of the City, the City would be liable.[7]

The City's primary objection to plaintiffs' instruction was that it contained no element of foreseeability. However, plaintiffs' instruction is almost verbatim an instruction approved in *Wells v. Vancouver*, 77 Wn.2d 800, 803, 467 P.2d 292 (1970), and the element of foreseeability is included. The court's instruction No. 6 reads: "An act of God is a natural phenomenon . . . so far outside the range of human experience that ordinary care did not require

the damage to the plaintiffs' property, then the City of Spokane is liable regardless of whether the damage to plaintiffs' property resulted from an ordinary freshet or an unprecedented flood."

[6] Proposed instruction No. 5a:

"The term 'act of God' refers to those events, accidents or manifestations of nature which proceed from natural causes and which are unusual and unprecedented in character, and which cannot be reasonably anticipated or guarded against by the exercise of ordinary care. Events of this type include unprecedented and extraordinary floods, earthquakes, cyclones and lightnings.

"If you find that the flood in this case was so extraordinary, unusual or unprecedented that it could not have been reasonably anticipated or guarded against in the exercise of ordinary care, then the City would not be liable for the damages to the plaintiffs' property."

Proposed instruction No. 5b:

"The City of Spokane has no duty to protect the private property of individuals. However, if the City of Spokane undertook some action for a public purpose, then the City had the duty to perform such action in a reasonable manner so as not to proximately cause damage to the private property of individuals."

[7] Preferably, the beginning of the second sentence in instruction No. 6 (see footnote 5) should begin with "If" rather than "When." This language apparently was taken from *Burton v. Douglas County*, 14 Wn. App. 151, 155, 539 P.2d 97 (1975), which quoted from *Tope v. King County*, 189 Wash. 463, 471-72, 65 P.2d 1283 (1937). The text of an opinion is not mandated instructional language. *Van Cleve v. Betts*, 16 Wn. App. 748, 756, 559 P.2d 1006 (1977). Also, for consistency, if the plaintiffs are not referred to by name, then the defendants should not be.

that *it should be anticipated or provided against.*" (Italics ours.) We find no material difference between the instructions of the City and those of the court on the element of foreseeability, except that the City's instruction repeats twice the phrase, "reasonably anticipated," and elaborates on what constitutes an act of God. Furthermore, instruction No. 6 is more comprehensive in including not only a paragraph on superseding cause but on concurrent cause, which was a theory of plaintiffs' case. *See Tope v. King County*, 189 Wash. 463, 65 P.2d 1283 (1937); *Burton v. Douglas County*, 14 Wn. App. 151, 539 P.2d 97 (1975). The City's theory was adequately covered under the instruction given. The trial court did not err in refusing to give the proposed instruction. *Tate v. Rommel*, 3 Wn. App. 933, 478 P.2d 242 (1970).

Since the City admitted that the settling pond was built for a public purpose, proposed instruction No. 5b would have been superfluous and confusing. We find no error in the instructions submitted to, nor excluded from, the jury.

Judgment reversed as to downstream owners and affirmed as to upstream owners.

JAMES and McINTURFF, JJ., concur.

Reconsideration denied February 9, 1979.

Review denied by Supreme Court May 4, 1979.