Matthias, J.
 

 The fundamental question presented is whether the appellant companies were public utilities within the meaning of Sections 5415 and 5416, General Code. The records disclose that the companies have repeatedly raised this question throughout the hearings before the Tax Commissioner and the Board of Tax Appeals and now urge it here.
 

 In the Akron case the record shows that the Akron Transportation Company operated a system for transporting passengers in or through Akron, Barberton, Cuyahoga Falls and Lakemore, Ohio. The municipal corporations are all within Summit county. The company operated motorbusses using liquid fuel and electric trolley coaches. The trolley coaches used elec
 
 *473
 
 tricity as power which was supplied through feeder wires from a power station and by overhead wires which conducted electricity to the coaches by trolley poles. No rails were used and, therefore, the busses and trolley coaches did not run on rails.
 

 The record in the Youngstown case shows that the Youngstown Municipal Railway Company furnished public transportation to passengers by means of motorbusses and electric trackless trolley coaches within the cities of Youngstown, Struthers and Campbell, and the Village of Poland, all in Mahoning county. Prior to 1941 it operated streetcars upon rails in the public streets but in 1940 all railroad operations ceased and the company thereafter operated motorbusses using liquid fuel and trackless trolley coaches propelled by electric energy supplied through overhead wires. Neither motorbusses nor trolley coaches operated on surface rails or tracks and no such rails were located within the public streets of any of such municipalities.
 

 It is the contention of each of the companies that since it was not operating equipment upon rails it was not engaged in the business of operating a street railroad company as the same is defined in Section 5416, General Code. In the consideration of this question an examination of certain pertinent statutes is necessary.
 

 Section 5415, General Code, defines “public utility,” as follows:
 

 “The term ‘public utility’ as used in this act means and embraces each corporation, firm, individual and association, their lessees, trustees, or receivers elected or appointed by any authority whatsoever, and herein referred to as express company, telephone company, telegraph company, sleeping ear company, freight line company, equipment company, electric light company, gas company, natural gas company, pipe line company, waterworks company, messenger company,
 
 *474
 
 union depot company, water transportation company, heating company, cooling company, street railroad company, railroad company, and such term ‘public utility’ shall include any plant or property owned or operated, or both, by any such companies, corporations, firms, individuals or associations.”
 

 In Section 5416, General Code, each of the terms used in Section 5415, General Code, is specifically defined. Particular attention is directed to the definition of “street railroad company.” The pertinent provisions follow:
 

 “Any person or persons, firm or firms, copartnership or voluntary association, joint stock association, company or corporation, wherever organized or incorporated :
 

 *
 
 *
 
 *
 

 “When engaged in the business of operating a street, suburban, or interurban railroad company, wholly or partially within this state, whether cars used in such business are propelled by animals, steam, cable, electricity, or other motive power, is a street, suburban or interurban railroad company * * V’
 

 Although it is not controlling in these cases, since we are applying the tax statutes, public utilities are similarly defined in Section 614-2, General Code, wherein “street railroad” is again defined as a company. A portion of that section reads as follows:
 

 “When engaged in the business of operating, as a common carrier a railroad, wholly or partly within this state with one or more tracks upon, along, above or below any public road, street, alleyway or ground, within any municipal corporation, operated by any motive power other than steam, and not a part of an interurban railroad, whether such railroad be termed street, inclined plane, elevated or underground railroad is a street railroad company. ’ ’
 

 
 *475
 
 A motor transportation company is defined in the same section as follows:
 

 “When engaged in the business of carrying and transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, in or by motor propelled vehicles of any kind whatsoever, including trailers for the public in general, over any public street, road or highway in this state, except otherwise provided in Section 614-84, is a motor transportation company;
 

 “The term ‘motor propelled vehicle’ when used in this chapter means any automobile, automobile truck, motorbus, or any other self-propelled vehicle not operated or driven upon fixed rails or track.”
 

 The provisions of Sections 502 and 503, General Code, establishing the authority of the Public Utilities Commission, are also pertinent.
 

 Section 502, General Code, provides, in part, as follows:
 

 “This chapter shall apply to the transportation of passengers and property between points within this state, to the receiving, switching, delivering, storing and handling of such property, and to all charges connected therewith, including icing charges and mileage charges, to all railroad companies, sleeping car companies, equipment companies, express companies, ear companies, freight and freight line companies, to all associations of persons, whether incorporated or otherwise, which do business as common carriers, upon or over a line of railroad within this state, and to a common carrier engaged in the transportation of passengers or property wholly by rail or partly by rail and partly by water or wholly by water. * * * ”
 

 Section 503, General Code, limits this jurisdiction as follows:
 

 ‘ ‘ This chapter shall not apply to street and electric
 
 *476
 
 railroads engaged solely in the transportation of passengers within the limits of cities, or other private railroads not doing business as common carriers.”
 

 It is the contention of the Tax Commissioner that, since the trackless trolleys operated by the companies had superseded the cars operated on rails and performed exactly the same service as had been performed before the abandonment of rails, they came within the meaning of “street railroads” by reason of the fact that the term is used in a generic sense. The Board of Tax Appeals points out that ‘ ‘ street railways ’ ’ was the only known popular term by which transportation companies, carrying passengers over and upon certain public streets on regular schedules for a stipulated price, were known, and that that nomenclature was intended to apply to all such enterprises that so used public highways under franchise rights irrespective of the type of vehicle used or the surface upon which they were operated. Reliance is placed on the language of this court in
 
 State, ex rel. Brunenkant,
 
 v.
 
 Wallace, Registrar,
 
 137 Ohio St., 379, 384, 30 N. E. (2d), 696, that “trolley busses are in a reality but a substitute for streetcars.”
 

 The decision of this question by the court is limited to an interpretation of the statutes involved. The court may not so construe the statutes, which are in effect taxing statutes, as to bring within the classifications established taxpayers not covered by the language thereof. The rule is well established that statutes imposing a tax will be construed strictly against the state and liberally toward the taxpayer and in no such instance will the language employed be extended by implication beyond its clear import. The statutory definitions of “street railroad company” set forth above do not include within their express terms trolley busses or motorbusses operated for the transporta
 
 *477
 
 tion of passengers within the limits of a city. On the contrary, logically, such bus lines fall within the classification of motor transportation companies as defined in Section 614-84, General Code. That section reads, in part, as follows:
 

 “The term ‘motor transportation company,’ or ‘common carrier by motor vehicle,’ when used in this chapter, shall include, and all provisions of law regulating the business of motor transportation, the context thereof notwithstanding, shall apply to every corporation, company, association, joint stock association, person, firm or copartnership, their lessees, legal or personal representatives, trustees, receivers or trustees appointed by any court whatsoever, when engaged, or proposing to engage, in the business of transporting persons or property, or both, or of providing or furnishing such transportation service, for hire, whether directly or by lease or other arrangement, for the public in general, in or by motor propelled vehicles of any kind whatsoever, including trailers, over any public highway in this state * *
 

 It is to be noted that by the express provisions of Section 503, General Code,
 
 supra,
 
 which has application to the chapter under which street railroads are regulated and the provision in Section 614-86, General Code, relating to motor transportation companies, regulation of street and electric railroads and motor transportation companies engaged solely in the transportation of passengers within the limits of cities are not subject to the authority of the Public Utilities Commission.
 

 In the case of
 
 State
 
 v.
 
 York Utilities Co.
 
 (decided by the Supreme Judicial Court of Maine, February 7, 1946), 45 A. (2d), 634, that court held that where a utilities company had reduced its street railway track mileage and had substituted busses it was not with
 
 *478
 
 respect to its buslines engaged in operating a street railroad, within the meaning of a statute making a street railroad corporation subject to gross receipts taxes. The following language quoted from the opinion at page 635 is pertinent:
 

 “Depending on the context, the word ‘railroad’ may or may not include a street railroad, but nowhere do we find any authority for holding that there is included within that designation any road on which the carriages or cars do not operate on rails. In fact our court has adopted the following definition found in 25 R. C. L., 1120, now found in 44 American Jurisprudence, 215, as to what constitutes a railroad: ‘Uenerically the word “railroad” includes all roads upon which the carriages or cars have wheels adapted to run, and which in operation do run upon metallic rails. The term includes tramways used in mining; it includes railroads in which the propelling power is steam, electricity, the horse or mule, and even those upon which push cars are propelled by men.’
 
 State
 
 v.
 
 Boston & Maine Rd. Co.,
 
 123 Me., 48, 55, 121 A., 541, 545. See, also,
 
 O’Malley
 
 v.
 
 Riley County,
 
 86 Kan., 752, 121 P., 1108, Ann. Cas., 1913C, 576;
 
 Woodward
 
 v.
 
 City of Seattle,
 
 140 Wash., 83, 248 P., 73.” In the last cited case the question involved was whether a city having statutory authority to operate a street railway system was thereby empowered to operate a motorbus service incidental to the operation of such street railway. In holding in the negative the court said: “The power granted by the statute is restricted to railways; and to say that the term ‘railways’ may be construed to include motorbusses and motorbus routes is to say that the term also includes all manner of transportation, including that by water and by air.’ ’
 

 The same question was considered in the case of
 
 *479
 

 Utah Rapid Transit Co.
 
 v.
 
 Ogden City,
 
 89 Utah, 546, 58 P. (2d), 1. The court held that authority to operate a street railway did not include authority to operate motorbusses. The following quotation from the opinion is pertinent:
 

 “Defendants do not claim the authority to operate motor vehicles as an incident to the operation of a street railway. So far as appears, the city does not, and has not operated any street railway. What the city does contend is that the authority conferred upon it to operate a street railway fairly implies authority to operate motorbusses. We are unable to concur in such view. Street railways and motorbusses are both now in common use as a means of carrying passengers, but to say that the former means of transportation fairly includes the latter is to extend the import of the word ‘railway’ far beyond its meaning. It is true as urged by defendants that motorbusses are now, in many instances, used to serve as common carriers, and, as such, perform services which were formerly performed by street railways. At the time the Legislature conferred upon the cities in this state authority to own and operate street railways there were other means of transporting passengers. Horse drawn busses or hacks were in common use when the act under review was passed, yet the lawmaking power did not see fit to permit the cities to own and operate such means of transportation. If the Legislature intended to empower cities of this state to own and operate any and all means of conveyance, it would have been an easy matter to have so provided. Many reasons might be suggested why the Legislature confined the grant of power to the use and operation of street railways, but to do so would be mere speculation. Whatever reasons the lawmaking power may have had in mind is no concern to the courts whose duty it is to give
 
 *480
 
 effect to the language used according to its fair import. It is one of the well recognized canons of statutory construction that when a statute directs a thing may be done by a specified means or in a particular manner it may not be done by other means or in a different manner. The familiar maxim
 
 expressio unius est exelusio alterius
 
 is especially applicable in the construction of a statute.” To the same effect see
 
 Utah Light & Traction Co.
 
 v.
 
 Public Service Comm.,
 
 101 Utah, 99, 118 P. (2d), 683.
 

 As disclosed by these cases the words, “street railways,” or, “street railroads,” have been construed generally to include transportation upon rails and to exclude transportation by motorbusses. It is argued in these cases that electric busses are different from motorbusses by reason of the fact that the former acquire their power of propulsion from wires which are suspended above the street. It is argued that by reason of the trolley arrangement these busses are not “motor propelled vehicles” within the definition of Section 614-2, General Code,
 
 supra.
 
 The primary difference, however, between a motorbus operated by a gasoline motor and one operated by an electric motor is only the source of their power. The decisions of the Board of Tax Appeals make no distinction between gasoline motorbusses and trackless trolley busses and it is not necessary in these cases to differentiate between these two methods of transportation. Neither is a street railroad and hence does not come within the definition of public utilities as found in Sections 5415 and 5416, General Code.
 

 The remedy for such situation is legislative. It is not the function of courts, by judicial interpretation, to create a classification of property for tax purposes. The decision of this question disposes of the appeals in both cases and it becomes unnecessary to consider the method adopted and applied by the Tax Commis
 
 *481
 
 sioner in the valuation of the property of the companies.
 

 For the reasons above stated, the decisions of the Board of Tax Appeals are reversed and the causes remanded to the Tax Commissioner.
 

 Decisions reversed.
 

 Weygandt, C. J., Stewart, Middleton, Taft and Hart, JJ., concur.