KANSAS CITY TERMINAL RAILWAY CO., a Corporation, Plaintiff-Respondent,

v.

KANSAS CITY TRANSIT, INC., a Corporation, Defendant-Appellant,

City of Kansas City, Missouri, a Municipal Corporation, Defendant.

No. 23362.

Kansas City Court of Appeals.

Missouri.

Oct. 2, 1961.

Powell C. Groner, Hale Houts, Hogsett, Houts, James, Randall & Hogsett, Kansas City, for appellant.

Sam D. Parker, William M. Stapleton, Kansas City, for respondent.

SPERRY, Commissioner.

This is a suit in equity by Kansas City Terminal Railway Co., a Corporation, plaintiff, against Kansas City Transit Co., defendant, and City of Kansas City, hereafter referred to as City, for a declaratory judgment, specific performance, and equitable relief. The pertinent evidence was documentary or by stipulation. Plaintiff prevailed, as against defendant, but City had a money judgment against plaintiff, from which plaintiff has not appealed. Defendant appeals.

Defendant says that there is but a single question involved on this appeal, to wit:

"* * * whether the *obligation* imposed by municipal franchises of the parties and a contract made between plaintiff and the predecessor of defendant whereby an operator of *street railway cars* is required, for the benefit of plaintiff, to participate in the costs incurred by the latter in construction and maintaining public-throughfare viaducts and subways over and under its tracks, is to be *expanded* so as to apply to the *motor bus* operation of defendant which now operates no street cars.

"Plaintiff contended below, and the trial court declared, that the obligation as to street cars so imposed was to be so expanded: in other words, that 'street cars' and 'motor buses' were in legal concept the same."

That is a fair statement.

Defendant contends that, in law, a "motor bus" is not a "street car" and that, consequently, the obligations imposed upon it by franchises and contract, to pay to plaintiff a share of its costs of construction and maintenance of the viaducts and subways mentioned in applicable ordinances, and in a contract entered into between the parties hereto in 1917 and expressly approved by City, are not now enforceable as against it for the reason that, although it uses the viaducts and subways for passage of its passenger carrying motor buses, it no longer operates "street cars", or owns or maintains "street railway lines". The court adopted plaintiff's theory and held

that defendant's obligation to pay a percentage of the cost of maintenance, as provided for by ordinances, and by contract approved by City, continues to exist because the essential *use* by defendant of the viaducts and subways is the same now as it was at the time said obligations were entered into, that is, the transportation of passengers. Thus, the issue is clear cut.

Plaintiff's petition is in two counts, the first count being based on its franchise ordinance No. 2336, sections 6, 7, 8, 9, and 19; and ordinance No. 9701, section 2. The second count is based on a contract entered into between plaintiff and defendant and approved by City, referred to as the 1917 contract by which, it is stated therein, the parties "composed" certain differences that had arisen between them under the ordinances.

So far as this lawsuit is concerned, the effect of the franchise ordinances is to grant to plaintiff the right, for 200 years from 1909, to use and occupy the streets and public ways of City, by its railroad tracks and facilities, conditioned upon plaintiff's construction and maintenance of viaducts and subways over and under its tracks for use of the public. Plaintiff agreed to those conditions with the provision that before City might pass any ordinance permitting any person or company operating, or proposing to construct or operate, "*a street car line or lines* over or upon any of the viaducts or approaches provided for in this ordinance to be constructed now or hereafter by the Kansas City Terminal Company, or any of those mentioned in paragraph (a) of section 6 hereof upon or over which no street-car line is constructed at the date when this ordinance is approved or becomes a law, it shall by ordinance require the first person or company desiring to *so use* and who shall be permitted to use such viaduct or viaducts or the approaches thereto, *or to construct a track or tracks thereon*, to pay to the Kansas City Terminal Railway Company one-half of the cost of such viaduct or viaducts and the approaches thereto, including the land damages, if any, paid by the Kansas City Terminal Railway Company on account of said approaches; and also to enter into a suitable undertaking to pay to the Kansas City Terminal Railway Company one-half of the subsequent maintenance of said viaduct, viaducts or approaches *during the period of such use*." The franchise also carried similar provisions with respect to subways.

Defendant's franchise ordinance 54217, enacted in 1927, granted it the right to use the streets and public ways of the city for a period of 20 years for the operation of street car lines, and it fixed defendant's obligations, with respect to plaintiff, as stated in the preceding paragraph.

For many years defendant's predecessor operated a street railway system over the public streets and ways of Kansas City, using the viaducts and subways mentioned herein and upon which it had constructed its tracks, upon which its street cars operated. During those years it paid such sums as became due under the terms of the ordinances and of the 1917 contract. However, in 1925, defendant began substituting motor buses and trolleys for its street car service, after being authorized so to do by the Public Service Commission and by the City, and without objection on the part of plaintiff. In 1937 such substitutions were further so authorized, and without plaintiff's objection. Substitution of motor buses for street cars and trolleys continued until it no longer operates cars or trolley buses, but operates only motor buses, as it has done for some years. Its rail and trolley facilities have been removed from the streets and public ways of the City, including the viaducts and subways involved herein: but its motor buses use said facilities in the same manner as do vehicles of the general public. Is defendant bound to pay a share of the maintenance costs of plaintiff's viaducts and subways which it uses for its motor bus traffic, in common with the traveling public, although it operates no street cars or street car lines anywhere in Kansas City?

■ The answer to that question must be found in the langauge of the above mentioned documents wherein the parties have expressed and fixed their respective obligations by their own contract and agreement. We are bound by the rule that an unambiguous instrument may not be judicially construed but must be given its plain, ordinary, and usual meaning. State ex rel. Prudential Ins. Co. of America v. Bland, 353 Mo. 956, 185 S.W.2d 654; Transcontinental & Western Air, Inc., v. Parker, 8 Cir., 144 F.2d 735, 736. The duty of Courts is to interpret and enforce contracts, not to make them. Tant v. Gee, 348 Mo. 633, 154 S.W.2d 745, 748; Rayburn v. Atkinson, (Mo.Sup.) 206 S.W.2d 512, 514; Forir v. Toman, (Mo.Sup.) 202 S.W. 2d 32, 34; 17 C.J.S. Contracts § 296, p. 702.

The subject covered by the contract, with which we are here concerned, is the use by defendant of viaducts and subways crossing over and under plaintiff's facilities in the operation of *street cars* and *street car lines*. Defendant is required to pay plaintiff a share of the costs of repair and maintenance of its viaducts and subways *so long as* defendant shall use them in its *operation of street cars* or *street car lines*. This, is in effect, the language used in the applicable ordinances and contract. When it no longer *so uses* plaintiff's facilities, the clear inference is that defendant shall no longer pay.

There are many court decisions wherein street cars and motor buses are defined. In City of Philadelphia v. Philadelphia Transp. Co., 345 Pa. 244, 26 A.2d 909, it was held that a bus is not a car. In Levy v. New Orleans & Northeastern R. Co., (La.App.) 20 So.2d 559, 562, it was said buses are not street cars and courts may not extend the application of an ordinance to a thing other than the certain thing mentioned therein. In Utah Rapid Transit Co. v. Ogden City et al., 89 Utah 546, 58 P.2d 1, 4, the court said that it had found no case holding that a motor bus line, not on rails, was a street railway. In Woodward v. City of Seattle, 140 Wash. 83, 248 Pac. 73, 75 the court said that to hold that the term Railways may be construed to include motor buses, is to say it includes all means of transportation, including those by water and air. In Akron Transportation Co. v. Glander, 155 Ohio St. 471, 99 N.E.2d 493, 497, the court said that neither a motor bus nor a trackless trolley is a street railroad. In State v. York Utilities Co., 142 Me. 40, 45 A.2d 634, 635, the court said: "Generically, the word 'Railroad' includes all roads upon which the carriages or cars have wheels adapted to run, * * * and do run upon metallic rails. The term includes tramways used in mining; it includes railroads in which the propelling power is steam, electricity, the horse or mule, and even those upon which push cars are propelled by men." The Court further said that statutes governing the operation of street railways and buses do not contemplate that the operation of a bus is in any way the operation of a street railroad.

■ It has been stipulated that regular common carrier transportation of metropolitan passengers by motor buses began in London, England, in 1904, and has been in operation there ever since that time; and that such service on a permanent basis began in New York City in 1907, and has continued ever since. Therefore, motor bus service was an established fact in 1909, whether or not the officials of plaintiff, the City, or defendant's predecessor had personal knowledge of it. It is the rule that when an ordinance or statute prescribes the particular thing upon which it is to operate all things not expressly mentioned are excluded from its operation. Hogan v. Fleming, 317 Mo. 524, 297 S.W. 404, 412; City of Hannibal v. Minor, (Mo.App.) 224 S.W.2d 598, 605; 62 C.J.S. Municipal Corporations § 442, p. 848.

■ Since common carrier transportation may be both by motor bus and by strert

**832**

car, and since they constitute separate and distinct methods of transportation, the specific mention of the one excludes the other from the operation of the ordinances involved herein.

The judgment is reversed.

MAUGHMER, C., concurs.

PER CURIAM.

The foregoing opinion of SPERRY, C., is adopted as the opinion of the Court.

All concur.