**KANSAS CITY, Missouri, Plaintiff-Respondent,**

v.

**KANSAS CITY TRANSIT, INC., Defendant-Appellant.**

No. 51544.

Supreme Court of Missouri, Division No. 2.

July 11, 1966.

Motion for Rehearing or to Transfer to Court En Banc Denied Sept. 12, 1966.

Herbert C. Hoffman, City Counselor, William Icenogle, Associate City Counselor, Benj. M. Powers, Sp. Counsel, Kansas City, for respondent.

Albert Thomson, Daniel L. Brenner, Kansas City, Linde, Thomson, VanDyke, Fairchild & Langworthy, Brenner, Ewing, Lockwood & O'Neal, Kansas City, of counsel, for appellant.

BARRETT, Commissioner.

Kansas City Transit, Incorporated, a "street railroad corporation" (RSMo 1959, § 386.020(5) (7), V.A.M.S.), and its predecessor corporations have operated the public transportation systems, streetcars, trolley cars and now buses, in Kansas City almost without interruption for more than fifty years. In 1917, amended in 1921 while in receivership, Kansas City Transit entered into a written contract with Kansas City and seven railroads and terminal companies for the construction, maintenance and reconstruction of the 23rd Street Viaduct. On June 26, 1964, Kansas City instituted this action against Transit for breach of the contract. Upon the pleadings, stipulations, attached affidavits and exhibits both parties moved for summary judgment. With a record in this posture the circuit court found that there was no genuine issue as to any material fact, that Kansas City was entitled to judgment as a matter of law and accordingly entered judgment in its favor for $668,870.38 and Transit has appealed claiming that it is no longer legally bound by the contract and that this court should reverse the judgment and enter a summary judgment in its favor.

Related if not connected contracts, some of them involving other viaducts and other parties as well as some of Transit's predecessors, are all fully set forth together with detailed facts and historical background in Kansas City v. Kansas City Terminal Railway Co. (1930), 324 Mo. 882, 25 S.W.2d 1055, Bowers v. Kansas City Public Service Co. (1931), 328 Mo. 770, 41 S.W.2d 810, and more recently Kansas City Terminal Ry. Co. v. Kansas City Transit (1961), Mo.App., 350 S.W.2d 828, overruled by this court en banc Kansas City Terminal Ry. Co. v. Kansas City Transit (1962), 359 S.W.2d 698, (Certiorari denied 371 U.S. 968, 83 S.Ct. 551, 9 L.Ed.2d 539), and Union Pacific Railroad Co. v. Kansas City Transit Co. (1966), Mo.App., 401 S.W.2d 528.

Insofar as material here the contract of July 31, 1917, between the city, the railroads and Transit's predecessor, provided for the construction of the 23rd Street Viaduct at an approximate cost of $602,703.00. The viaduct was to be constructed over the tracks of the several railroads and of course was to be used by Transit "for the operation of its streetcars over the same." Each of the three contracting parties, the city, Transit and the railroads, were to contribute to the original cost of construction one-third of the contract price, Transit's third being estimated at $200,921.00. There were detailed specifications but of the greatest

significance, in addition to the provisions as to original construction and cost, are these provisions relating to ownership, use, maintenance, reconstruction and other costs or expenditures:

"12. USED BY STREET RAILWAY (Transit): The Kansas City Railways Company (Transit), its successors and assigns, may use the Main Viaduct and the 'Wyoming Street Approach' thereto for its double track electric street railway, *subject to the provisions of its franchise with the City,* under Ordinance Number 20140, approved June 15, 1914, *and amendments thereof.*"

\* \* \* \* \* \*

"14. MAINTENANCE. *The viaduct* and its approaches, when completed, and the easements therefor, *shall be the property of Kansas City,* Missouri, *as and for a public highway,* and Kansas City shall be responsible for maintaining and lighting said structure and its approaches and keeping them in repair; *but each of the parties hereto* \* \* \* *shall contribute to the cost of such maintenance, repairs or the reconstruction thereof,* \* \* \*."

\* \* \* \* \* \*

"*If, at any time, such viaduct* or its approaches *needs repairing or reconstructing, Kansas City shall proceed at once, to make such repairs or do such reconstructing,* and when finished, it shall render an itemized statement thereof to each of the parties hereto, *and* \* \* \* *each party shall pay to Kansas City its share of such maintenance, repairs or reconstruction* \* \* \*."

Separately and additionally Transit's predecessor agreed that:

"The streetcar tracks and the necessary equipment thereof on said viaduct or its approaches, shall be maintained by the Kansas City Railways Company, its successors or assigns, without cost to Kansas City or to the other parties contributing to the cost of said viaduct and approaches."

In 1921, with the approval of the United States District Court, the appellant's receivers entered into a supplemental agreement with the railroads and the city "For The Completion Of The Twenty-Third Street Viaduct." Again insofar as material here that additional contract contains these provisions:

"—and with such modifications as would better secure to the Kansas City Railways Company \* \* \* *the use, control and occupancy of that portion of the main viaduct designed and constructed exclusively for street railway traffic* \* \* \* and with such modifications *as would prevent the use by other street railways of such* portion of the main viaduct \* \* \*."

\* \* \* \* \* \*

"—and upon the aforesaid payments being made, and the balance of said obligation paid in full \* \* \* the Kansas City Railways Company \* \* \* *shall have the exclusive use and occupancy of the space set apart for streetcars on the main viaduct* \* \* \* *to the exclusion of all other streetcars for its or their modern double track electric street railroad* \* \* \*."

\* \* \* \* \* \*

"And *Kansas City,* Missouri, hereby *agrees that it will not permit any other persons or companies to use said viaduct and approach, or any part thereof, for the operation of streetcars thereon* \* \* \* nor permit such use in such a manner, or to such an extent as to unreasonably interfere with the use thereof by the Receivers \* \* \*."

\* \* \* \* \* \*

"(3) Maintenance: It is further agreed that the said *Receivers,* their successors, The Kansas City Railways Company, its successors \* \* \* *shall be obligated to keep and perform all of the obligations to be kept and performed by the Kansas City Railways Company,* its successors, \* \* \* *under Clause 14 of the contract dated July 31, 1917, relating*

*to maintenance, repairs and reconstruction of said viaduct and its approaches."*

The parties carried out, performed and operated under this original contract over the years, the 23rd Street Viaduct was completed, Transit's streetcar tracks were installed on the designated area and all payments were made by the parties as stipulated. Other facts, particularly those noted by the appellant in its brief, are that on November 1, 1937, the city passed an ordinance authorizing Transit to install and use "trolley bus and motor bus lines for existing facilities." In 1948 and 1950 the city passed ordinances authorizing Transit to substitute buses for streetcars on 12th and 18th Streets and their viaducts, appellant repeatedly says "Transit accepted this ordinance." In 1948 Transit was permitted to surrender its trackage to the city, including that over the 23rd Street Viaduct, for which it paid the city $70,000 "for rehabilitating street" and to substitute bus service. After the 1951 flood service was interrupted for making "alterations," raising a portion of the viaduct "as determined" by the United States Corps of Army Engineers. The cost of that particular job was $113,112.64 and when Transit refused to pay its one-third the city petitioned the Public Service Commission of Missouri for an order approving the alteration and "apportioning the costs." But as to Transit and this phase of the matter the Public Service Commission had no jurisdiction and so could only allocate the costs between the railroads and the city. As to Transit the commission said, "If Public Service is liable for any of the costs *its liability would result from it contracts* and operations pertaining to the viaduct, *and liability therefor, if any, would not come under the jurisdiction of the Commission."* Re 23rd Street Viaduct, Kansas City, Mo., 6 P.S.C.R.(N.S.) 669, 676. Since 1954 and Transit's refusal to pay one-third of a $39,000 repair bill the parties have stipulated or agreed by ordinance, according to the petition in this case, to continue Transit's services and facilities and "neither party waived its

right under the original contract for repairs." One other incidental matter should be noted, in 1961, when Transit became an integrated and diversified company and petitioned the Public Service Commission "for authority to effect a corporate reorganization and merger" it set forth its certificate of convenience and necessity to operate a "street railroad" in Kansas City, it set forth the orders permitting it "to convert its transit system completely to motor bus operation," it set out the "retirement" of streetcar tracks and specifically pledged that "as a result of the reorganization plan and merger, transit service will continue to be provided in the Greater Kansas City area under a strengthened corporate structure ultimately to the benefit of all concerned, including the public." These matters were all noted in the commission's order of approval along with Transit's assumption of "all liabilities and obligations."

And now giving rise to the immediate litigation, by 1960 the 23rd Street Viaduct "became in dangerous condition and required extensive repairs" and Kansas City and the railroads, after the appropriate preliminary proceedings, applied to the Public Service Commission for an apportionment of cost and permission for "repair and reconstruction" of the viaduct, Transit not joining or appearing. And after a full finding of facts the commission gave its authorization, the viaduct work was completed and in accordance with the original contract Kansas City and the railroads paid the cost of $2,006,611.15 and billed Transit "in connection with the rehabilitation" for its one-third share $668,870.38 and upon its refusal to pay instituted this action.

One of appellant Transit's assignments of error was authoritatively disposed of in 1929 and requires but brief consideration here, that is the contention that "a construction of the contracts that would still impose the burden on Transit to contribute toward the maintenance, reconstruction, or repairs of the 23rd Street Viaduct would amount to a violation of the constitutional safeguards guaranteed" by the 14th Amendment and

Art. 1, Sec. 8, clause 3 of the Constitution of the United States, the due process, equal protection and interstate commerce clauses. But in the 1920s one of the parties refused to build its part of the Oak Street Viaduct and this court en banc, Kansas City v. Kansas City Terminal Railway Company, 324 Mo. 882, 25 S.W.2d 1055, in a suit to compel construction, had this to say, 1. c. 907, 915, 916, 25 S.W.2d 1. c. 1066, 1070:

> "The city having fully performed the contract on its part had, and has, a vested right to performance on the part of the company."

\* \* \* \* \* \*

> "Neither insolvency nor the difficulty attendant upon the borrowing of money with which to perform constitutes a defense to an action to enforce a contract, unless made so by the contract itself. It is not a defense in this case. Nor does the claim that if the defendant be required to discharge a valid obligation entered into by it for the purpose of acquiring in part its railroad property, such requirements will burden interstate commerce in violation of the commerce clause of the Constitution of the United States, merit serious consideration."

As to the specifically briefed claim that enforcement of the obligation deprived Transit "of its property without due process of law and deprives it of the equal protection of the law" the court said:

> "This is a suit to compel the specific performance of a contract. The contract is a valid one; the parties to it were competent; the performance sought falls clearly within its terms and intent. Its enforcement as against defendant cannot in reason violate any constitutional right."

Invoking two auxiliary rules of construction, one, "that, where a contract is fairly and reasonably open to two constructions, one making it legal and the other illegal, the former must be adopted" (Wiggins Ferry Co. v. C. & A. Ry. Co., 128 Mo. 224, 245, 27 S.W. 568, 571, 30 S.W. 430), and two, that the laws in existence, including city ordinances, when the contract was executed became a part of the contract (1 Restatement, Contracts, Sec. 236(a)), the appellant contends that it once had an exclusive right to operate streetcars over the viaduct and since other bus companies now also have that right and operate over the viaduct its exclusive right to use has been destroyed and therefore it is said that the circuit court erroneously concluded it was now bound to perform its contract obligations. Specifically, this is its assignment of error, urged in connection with the interstate commerce clause and the auxiliary rules: "The 1917 agreement as amended in 1921 required Transit to pay maintenance costs only while it had an exclusive right to operate streetcars over the viaduct. The court erred in entering a judgment against Transit for maintenance costs incurred after Transit no longer had an exclusive right to operate buses over the viaduct." Briefed as a separate point but in fact in this very connection appellant Transit contends that the cases of Kansas City Terminal Ry. Co. v. Kansas City Transit, by this court en banc (359 S.W.2d 698), and Union Pacific Railroad Co. v. Kansas City Transit Co., by the Kansas City Court of Appeals (401 S.W.2d 528), especially insofar as the former construes "use" "in another contract under an ordinance and is not compelling authority for a decision in this case holding that streetcars are buses under the 1917 agreement as amended, and therefore the court erred in entering judgment against Transit based upon that decision."

The appellant points only to the 23rd Street Viaduct and of course the viaduct and its contract comprise the subject matter of this litigation and it is assumed that for its franchise purposes Transit has the right to an exclusive use of the viaduct. Nevertheless, as it repeatedly recited in its latest plan of reorganization, the appellant has a franchise from Kansas City to operate as a common carrier of passengers in the greater Kansas City area. That franchise

is for a number of years and the appellant does not claim that any other common carrier is operating in competition with it or that Kansas City has permitted an infringement of its franchise rights and it does not propose in this proceeding, even if it were possible, to surrender or modify its franchise rights. The appellant is a "street railroad corporation" and its franchise is for a "street railroad" which includes "by whatsoever type of power operated" and "by whatsoever type of vehicle operated, for public use in the conveyance of persons or property for compensation." RSMo 1959, § 386.020(5) (7), V.A.M.S. While Transit built and maintained its tracks and operated streetcars, as the contract provided, its use of that part of the viaduct was indeed "exclusive" but it was no doubt to its franchise advantage to surrender its tracks and that space to the city and to substitute buses for streetcars. And when it voluntarily made the substitution it necessarily used the viaduct in common with all other vehicular traffic including other types of common carriers of both persons and freight but not upon this record in derogation or infringement of its franchise rights.

In any event upon all the essential issues this case is governed and controlled by the opinions in Kansas City Terminal Co. v. Kansas City Transit Co., 359 S.W.2d 698, and Union Pacific R. Co. v. Kansas City Transit Co., 401 S.W.2d 528. The appellant contends that the Kansas City Terminal case is distinguishable in that "the railroads did not agree that Transit would have an 'exclusive use.' The city in our case did agree that Transit's use would be exclusive and therefore when its use became nonexclusive, the contract was breached and terminated and Transit's obligation to maintain ceased." But, as indicated, upon this record Transit yet enjoys its exclusive franchise use not only of the streets and highways in the city but as well of this and other viaducts. In addition, in the Terminal case the court of appeals, upon the appellant's urging, held that "streetcars and streetcar lines" in the contract did not mean "buses" and that therefore when Transit was permitted to substitute bus service for streetcar service it was no longer bound by its contract with the railroads "to participate in the costs incurred by the latter in construction and maintaining public-thoroughfare viaducts." 350 S.W.2d l. c. 829–830. The case was transferred and the court en banc not only overruled the court of appeals but by necessary implication if not directly disposed of Transit's contentions here. Material here, the court said, 359 S.W.2d l. c. 704:

"Thus Transit was required to assume the same status as Terminal as to paying the cost of building the viaducts and subways and their approaches, including the land cost. Therefore, it was contemplated that Transit and Terminal should participate in this enterprise on the same cost basis. However, Transit was given a way out of its obligation for maintenance because that obligation was for 'the period of such use.' * * * The decisive issue is: What 'use' was meant? Transit is still using the viaducts and subways * * * for 'transportation of metropolitan passengers as a common carrier in intrastate and interstate commerce.' It is our view that this was the use originally contemplated although the motive power and type of vehicle has changed * * *."

* * * * * *

"The obligation to pay was unequivocal and unconditional. Although elsewhere therein the right to put tracks on the station plaza was stated and the obligation to pave around tracks on viaducts and in subways provided, the obligation for the cost of future maintenance as well as the cost of building the new structures was stated unconditionally without regard to how they were to be used by Transit."

* * * * * *

"Our view as to the reasonable construction of the agreement (based on the

ordinances and contract) considered as a whole is that the maintenance obligation continues as long as Transit continues to use the viaducts and subways for its business of surface transportation of passengers over them regardless of the kind of motive power and vehicles used for that purpose."

When the railroads enforced Transit's obligation to contribute to the repairing of another viaduct the court of appeals in Union Pacific Railroad Co. v. Kansas City Transit Co., 401 S.W.2d 528, 1. c. 536, applied and followed the Terminal case adding, material here:

"There has been no failure or lapse of consideration to excuse Transit from performing its contract obligations. * * * It is the law that when a contracting party has fully performed its contract obligations it thereby acquires *a vested right* to performance by the other party in accordance with the contract terms."

\* \* \* \* \* \*

"The change of condition resulting from Transit's abandonment of street cars and its use of motor buses instead did not affect Union Pacific's vested right to performance by Transit. It is of no consequence that Transit thereafter derived no utility from the abandoned tracks."

As suggested by appellant those were railroad cases involving separate contracts but all of these contracts are obviously a part of a larger single plan and purpose, as suggested in the Terminal case, "the surface transportation of passengers" by a franchised "street railroad corporation" in the greater Kansas City area and there is no more reason for not enforcing this contract in favor of the city than there was for not enforcing the other contracts for the railroads. Kansas City v. Kansas City Terminal Railway Co.; Kansas City Terminal Ry. Co. v. Kansas City Transit; Union Pacific Railroad Co. v. Kansas City Transit Co., supra.

The appellant's final claim is that this action is barred by the ten-year statute of limitations, RSMo 1959, § 516.110, V.A. M.S. But in order to make the claim appellant invokes the doctrine of anticipatory breach of contracts (1 Restatement, Contracts, Sec. 318) and the rule in certain employment contracts (Baron v. Kurn, 349 Mo. 1202, 164 S.W.2d 310, 142 A.L.R. 787) and contends, since it breached the contract by denying liability for its obligations in 1954, it is not liable in damages for the breach for which recovery is sought in this suit instituted June 26, 1964. To support an anticipatory breach Transit says that when, on April 2, 1954, the city claimed that it was liable for one-third the cost of certain other repairs and it then denied liability it thereby started the running of the statute of limitations: "In our case, Transit failed to pay the installment due for maintenance and denied liability for repairs. Transit took the position that it had no obligation to pay maintenance costs since buses were not streetcars and a nonexclusive use is not an exclusive use." Thus it is said that this refusal to pay in 1954, together with its denial of liability at that time, was a total breach of the contract, an anticipatory breach, and that therefore this action instituted more than ten years later was barred by the statute of limitations.

The contention as a whole is somewhat disingenuous, the city is not asserting a right to institute and maintain an action on the theory of Transit's anticipatory breach, on the contrary the appellant is claiming that by its own conduct in refusing to observe its contractual obligations some years ago, it set in operation the statute of limitations. Among other authorities the appellant relies on the rule set forth in Sec. 318, Restatement, Contracts, unmindful, apparently of Sec. 322: "If no action on an anticipatory breach is brought before the time fixed by the contract for the beginning of performance by the party who has committed such a breach, the period of the Statute of Limitations begins to run only from the time so fixed by the contract." Or as

the commentary to rule 318 states on page 477: "So likewise, if no action is brought, the Statute of Limitations will not run on the right of the injured party from the time of the repudiation but only from the time when there is a failure to perform a promise (Sec. 322)." The rationale of Baron v. Kurn, supra, is explained in its annotation "that in such case the employee's cause of action is for his wrongful discharge which accrues as one cause of action at the time of the discharge and against which the statute of limitations commences to run from that time, and not for wrongful failure to restore him to his job, which, assuming that the employer and employee relationship is not terminated by a discharge in fact, gives rise to successive causes of action as long as it continues, and therefore, the causes of action which accrue within the limitation period are not subject to its bar." Annotation 142 A.L.R. 797, 798–799.

■ Perhaps, as the respondent suggests, a complete and ready answer to the appellant's contention lies in the very plain language of the statute itself: "Civil actions * * * can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, *the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment*, and, if more than one item of damage, then the last item * * *." RSMo 1959, § 516.100. As applied to this action and the appellant's reliance on the doctrine of anticipatory breach, the statute is self-explanatory (Rippe v. Sutter, Mo., 292 S.W.2d 86) and if the contract is to be construed as providing for a series of installments suit was appropriately instituted within ten years of the accrual of the last installment. Sabine v. Leonard, Mo., 322 S.W.2d 831.

In its reply brief the appellant has attached an exhibit from the April 1955 hearing in the 23rd Street Viaduct case before the Public Service Commission, also a series of letters to and from Transit's predecessor (also said to be exhibits in the case before the commission), including its then counsel's opinion as to certain legal questions. The respondent has filed a motion to strike these fifteen pages from the appellant's brief for the reasons that they "are not a part of the record in this case," were not before and were not presented to the trial court, and are not matters of which this court may take judicial notice. It is not necessary to consider the motion and suggestions in detail, this of course is not the proper and orderly manner of perfecting and presenting a record and appeal in this court. However, this was a court-tried case and the Public Service Commission's official report has been judicially noted (State v. Public Service Commission, Mo., 291 S.W.2d 95), and inadmissible evidentiary matters have been ignored (Civil Rule 73.01(d), V.A.M.R.; RSMo 1959, § 510.310, V.A.M.S.), and in these particular circumstances the motion to strike is overruled.

And for the indicated reasons the judgment is affirmed.

STOCKARD, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.